**UNITED STATES of America and Carroll L. Beason, Special Agent, Internal Revenue Service, Plaintiffs,**

**v.**

**Carl COHEN, Defendant.**

**Civ. No. 754.**

United States District Court
D. Nevada.

Nov. 29, 1965.

**ROGER D. FOLEY, Chief Judge.**

On July 8, 1964, C. L. Beason and J. R. Chamberlain, Special Agents of the Internal Revenue Service, Intelligence Division, then conducting an investigation into the income tax liability of Carl Cohen and his wife, called upon Cohen and made demand to examine his tax records for the years 1958 through 1963, inclusive. Cohen advised the Agents that the tax records were in the possession of his accountant, Samuel Berke, of Beverly Hills, California. On July 9, 1964, Cohen picked up the tax records from Berke's office. On July 13, 1964, Agent Beason made a demand upon Berke for the tax records, and was advised that Cohen had the tax records in Las Vegas.

At Beason's request, Berke, on several occasions, asked Cohen to return the tax records to him. Cohen refused. This Court finds that Berke did so only because of Beason's request. Berke did not make the request because he wanted the records back. The contrary is true. At all times, Berke disclaimed any property or possessory right to the records.[1]

On September 29, 1964, Beason served Cohen with a summons requiring the production of:

"1. All accounting work papers, statements, records, schedules, abstracts, analyses, and compilations prepared by Samuel Berke, C. P. A., or by members of his firm relating to your income tax liabilities for the years 1958 through 1963, which you

John W. Bonner, U. S. Atty., Michael DeFeo, Special Asst. U. S. Atty., Las Vegas, Nev., for plaintiffs.

V. Gray Gubler, Las Vegas. Nev., Adrian B. Fink, Jr., Cleveland, Ohio, for defendant.

---

1. On September 29, 1964, Berke wrote to Beason, in part, as follows: (See Exhibit 6)

"This is in reply to your suggestion in our telephone conversation of September 2nd that I ask Mr. Cohen for the return of the records which, at his request, Mr. Golden and I gave to him in the early part of July.

"As I have already advised you, it has been our invariable practice to give to a client any books, records, papers, or other documents in our possession pertaining to him upon his request for them. We have always considered that by so doing we were relinquishing the documents permanently and that we had no right to get them back. Mr. Golden and I separately gave Mr. Cohen's records to him, at his request and had no expectation that he would return them and no understanding that we were entitled to recover them from him. I might point out that Mr. Cohen's documents were delivered to him before we were aware that you wished to examine them.

"Under the circumstances, we have no interest in or right to possession of the records which we furnished Mr. Cohen and therefore have no right or obligation to ask him to return them to us."

obtained from Mr. Berke on July 9, 1964.

"2. All correspondence files of Samuel Berke relating to accounting and general business services performed by his firm for you during the years 1958 to the present time, which you obtained from Mr. Berke on July 9, 1964."

Cohen refused to produce the records summoned, invoking the privilege against self-incrimination.

Beason petitioned this Court for an order to show cause why Cohen should not be compelled to produce the summoned records. An order to show cause was thereupon issued, and after a hearing and the filing of briefs, the matter was submitted to the Court for decision.

Government counsel concedes that Cohen has rightly refused to produce his personal records, but contends that the *work papers, memoranda and correspondence prepared by Berke and his staff* prior to the commencement of the investigation are the personal property of Berke and not of Cohen and therefore are not protected by the taxpayer's claim of privilege against self-incrimination. The Government relies upon Section 5037 of the California Business and Professions Code [2] and upon two cases. In re Fahey, 6 Cir. 1961, 300 F.2d 383. Deck v. United States, 1964, 119 U.S.App.D.C. 240, 339 F.2d 739.

In *Fahey*, counsel for the taxpayer obtained possession of the work papers from taxpayer's accountant. The accountant directed the attorney to turn the work papers over to the Government. Counsel refused and claimed the privilege against self-incrimination on behalf of his client. The Court held, first, that

the attorney could not invoke the privilege against self-incrimination for the client,[3] and secondly, that there was substantial evidence to support the trial court's finding that the work papers were the property of the accountant.

The taxpayer in *Deck* had a California accountant who, at taxpayer's request, had delivered his work papers to taxpayer's counsel, to be returned after examination. The accountant, after being served with summons to produce, demanded the return of the work papers. The taxpayer intervened and contended that the work papers were his property and claimed the privilege against self-incrimination. The trial court found that the work papers were the property of the accountant and that the privilege was unavailable. The Court of Appeals affirmed, holding that under Section 5037 of the California Business and Professions Code, the work papers were the property of the accountant and should be produced. However, taxpayer contended that even if the work papers were the accountant's property, the work papers were in his possession rightfully and he could prevent their production through the invocation of the privilege against self-incrimination. The Court held that since the accountant was the owner and had demanded their return, neither taxpayer nor his counsel had any right to retain the papers, saying:

"* * * We think that one who holds papers against the owner's demands for their return cannot resist production by claiming the privilege against self-incrimination."

Counsel for Cohen first contends that the work papers are the taxpayer's property, and secondly, that even if the ownership of the work papers should be

2. *"Accountant's Ownership of Papers.* All statements, records, schedules, working papers and memoranda made by a certified public accountant or public accountant incident to or in the course of professional service to clients by such certified public accountant or public accountant except reports submitted by a certified public accountant or public accountant to a client shall be and remain the property of such certified public accountant or public accountant, in the absence of an express agreement to the contrary between the certified public accountant or public accountant and the client." Cal.Bus. and Prof.Code, § 5037.

3. This is not the law in the Ninth Circuit. See United States v. Judson, 9 Cir. 1963, 322 F.2d 460.

found to be in Berke, the accountant, Cohen had the work papers in his rightful possession in a purely personal capacity at the time the summons was served.

Cohen relies upon the cases of United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Application of House, N.D.Cal.1956, 144 F.Supp. 95; Hughes v. Foster, Lewis, Langley and Onion, W.D.Tex.1965, 16 A.F.T.R.2d 5116.

At page 101 of 144 F.Supp., the late Judge Murphy states:

" * * * The argument of the government is therefore reduced to the proposition that the application of the privilege against self-incrimination turns on the difference between rightful indefinite possession and legal title. Nothing in the cases substantiates this notion that a narrow concept of property law should determine the availability of Constitutional guarantees against self-incrimination. The Supreme Court has stated the rule as follows:

' * * * the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least *in his possession in a purely personal capacity.*' (Emphasis added.) See United States v. White, 1944, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542."

It is noted that Judge Murphy cites In the Matter of Daniels, S.D.N.Y.1956, 140 F.Supp. 322. At page 327, the New York Court states:

" * * * that the privilege of the Fifth Amendment does not rest upon an individual's absolute title to the documents in question; rather it rests upon his legitimate and personal possession."

The Texas Court, in the recent *Hughes* case (supra), states, in part:

" * * * that at the time the summons was issued, the rightful, indefinite and legitimate possession of such work papers was in the taxpayers in a purely personal capacity, through the respondent as their legal counsel, that by affidavit filed herein the taxpayers declined to produce such documents, or to permit the respondent to produce them, for the reason that they may contain evidence which would tend to incriminate the taxpayers; that the taxpayers are entitled to resist the production of the work papers on the ground of possible self-incrimination under the Fifth Amendment to the Constitution of the United States; that their privilege against self-incrimination has been sufficiently invoked; and that, therefore, the respondent's motion to quash the summons and to vacate the Court's order to show cause should be granted."

This Court holds that at the time that Cohen was served with the summons, September 29, 1964, he held the work papers, memoranda and correspondence in his rightful and indefinite possession in a purely personal capacity. This is sufficient to entitle him to invoke the privilege against self-incrimination. *White, House, Daniels,* and *Hughes,* supra. There is no need to determine the ownership of the work papers. *Fahey* and *Deck* are distinguishable. The taxpayers in those cases could not claim the rightful and indefinite possession, since the accountants, found to have been the owners, had demanded that the work papers be given to the government *(Fahey)* and that they be returned *(Deck).*

In view of the position this Court takes, there is no need to answer the contention raised by Cohen, that since there had been a prior investigation made by the Internal Revenue Service of Cohen's tax liability for some of the same years, the Agents, here, did not comply with 26 U.S.C. § 7605(b).

It is ordered that this Court's show cause order be vacated and that the summons be quashed.

This decision constitutes the Court's Findings of Fact and Conclusions of Law. Defendant's counsel shall prepare the appropriate Order.