**UNITED STATES of America and Edward F. Brogan, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Leonard L. LEVY, Marvin Weinberg and Nathan M. Silverstein, Respondents.**

**Civ. No. 11655.**

United States District Court
D. Connecticut.

July 11, 1967.

Jon O. Newman, U. S. Atty., Samuel J. Heyman, Robert D. Glass, Asst. U. S. Attys., New Haven, Conn., for petitioners.

Thompson, Weir & Barclay, New Haven, Conn., for respondents.

MEMORANDUM OF DECISION

ZAMPANO, District Judge.

Special Agent Brogan of the Internal Revenue Service petitions this Court, pursuant to 26 U.S.C. § 7604, for an order to enforce three administrative summonses served on a taxpayer, his attorney and his accountant. The attorney, Silverstein, and the accountant, Weinberg, contend they are unable to comply with the summonses because they do not possess the documents requested. The taxpayer Levy, refuses to produce the records sought on the ground that compelled production would violate his rights under the Fourth and Fifth Amendments of the United States Constitution.

At the hearing before the Court petitioner Brogan testified but the respondents were not called as witnesses.

## I

Taxpayer Levy is an attorney whose 1964 personal income tax return was prepared by respondent Weinberg, a certified public accountant. During the course of the preparation of the tax return, Weinberg prepared and retained in his office certain accounting "work papers", including adding machine tapes and various schedules.

In 1965 a revenue agent was assigned to make a routine audit of the tax returns filed by Levy for the years 1962, 1963, and 1964. After a preliminary audit, the matter was referred to Special Agent Brogan of the Intelligence Division whose duties include investigation of potential criminal tax returns. On November 17, 1965, Brogan requested Weinberg to submit his work papers for examination. Weinberg replied that the documents had been turned over within the past month to attorney Silverstein. Thereafter on several occasions, Silverstein refused to allow Brogan to inspect the papers. Finally, on March 28, 1966, Brogan served upon Silverstein an administrative summons to produce the memoranda prepared by Weinberg. Silverstein appeared in response to the summons but stated he could not produce the specified items because they were in Levy's possession.

On July 5, 1966, Brogan served similar summonses upon Weinberg and Levy, both of whom appeared as directed. Weinberg informed the petitioner the work papers were not in his possession and Levy invoked the constitutional privileges of the Fourth and Fifth Amendments.

The government, accepting the stipulation that neither Weinberg nor Silverstein possess the work papers, now seeks compliance with the summons against Levy only.

## II

The petitioner contends that the work papers of a taxpayer's accountant, even if in the possession of the taxpayer, must be produced pursuant to an administrative summons. It relies on the cases of Deck v. United States, 119 U.S.App.D.C. 240, 339 F.2d 739 (1964), cert. denied, 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560 (1965); Sale v. United States, 228 F.2d 682 (8 Cir. 1956), cert. denied, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956); In Re Fahey, 300 F.2d 383 (6 Cir. 1961); United States v. Pizzo, 260 F.Supp. 216 (S.D.N.Y.1966); United States v. Boccuto, 175 F.Supp. 886 (D. N.J.1959), appeal dismissed, 274 F.2d 860 (3 Cir. 1959).

The taxpayer, on the other hand, asserts that the work papers are his private property or alternatively, that even if title or ownership remains in Weinberg, he possesses the papers in a purely personal capacity. Under these circumstances, he claims that his constitutional privileges shield him from a forced disclosure of the documents. See, United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); United States v. Cohen, 250 F.Supp. 472 (D.Nev. 1965); Application of Daniels, 140 F. Supp. 322 (S.D.N.Y.1956); Application of House, 144 F.Supp. 95 (N.D.Cal.1956).

While at first blush the cases cited by the parties appear inconsistent, a careful review reveals that the difference in result in each of these cases was the consequence of distinguishable factual findings rather than conflicting applications of pertinent legal principles. In a leading case, United States v. White, supra, which required a union officer having custody of union records to surrender them regardless of their self-incriminating nature, the Supreme Court said "the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." 322 U.S. at 699, 64 S.Ct. at 1251. Where courts have found in fact that an accountant had no property or possessory rights in work papers held by a taxpayer, they have denied production (*House, Daniels, Cohen*); on the other hand, where an accountant has retained "title" or ownership rights to the papers, courts have enforced the government's demand for

production (*Fahey, Deck, Sale, Pizzo, Boccuto*).

In *Sale,* the Court determined that the work papers were the property of the accountant and as such were not privileged.[1] In *Deck* and *Fahey,* the accountants, found by the court to be the owners of the documents, had demanded their return from the taxpayers. The taxpayers, lacking ownership or any possessory right, were compelled to produce the papers.[2] In *Boccuto,* despite the accountant's affidavit to the contrary, the court "found" that the work papers were the property of the accountant and not the taxpayer and, as such, they were not privileged.[3] The district court, in *Pizzo,* determined the taxpayer did not have an ownership right to the accountant's work papers and any possessory right the taxpayer might have had to the papers was terminated by the accountant's demands for their return.

In the line of cases wherein production was denied, the courts determined that on the facts and circumstances of each of the cases the taxpayer either owned the work papers or had them in his possession in a purely personal capacity. *Cohen,* while rejecting the ownership test, held that the taxpayer "held the work papers, memoranda and correspondence in his rightful and indefinite possession in a purely personal ca-

---

1. The court said:

   "The evidence on the ownership of the work papers is conflicting. There is evidentiary support for the court's [the District Court] finding. The work papers had remained in the accountant's possession from 1949 to 1953 and had been kept in the accountant's office with similar work papers arising out of other transactions. We are unable to say that the court's decision on this issue was clearly erroneous." 228 F. 2d at 686.

2. In *Deck* the taxpayer's attorney had indicated to the accountant that he would return the work papers "as soon as his examination of them was completed." The accountant had twice made demands upon the attorney so that he could comply with a summons issued to him by the Internal Revenue Service. The court held the papers producible from the attorney under the facts of the case. The court said:

   "The record establishes that Phillips [the accountant] had worked for the Kless Co. [the taxpayer] since 1946. It was not until after the tax investigation began that Kless showed any interest in the work papers then in the possession of Phillips; until Kless requested them they were kept by Phillips in his office and were apparently regarded by all concerned as his property. Kless was only one of many who utilized Phillips' services. Phillips was not on the payroll of the partnership." 339 F.2d at 740.

   In In Re Fahey the court said:

   "The findings and conclusions made by Judge Shelbourne [District Court Judge] reflect that he found as a fact the work papers in the file belong to Mr. Powell [the accountant], that possession of these papers by Mr. Fahey [the taxpayer] was temporary and this temporary possession was terminated by the letter of June 17, 1960." 300 F.2d at 385.

3. The court, distinguishing *Application of House,* supra, from Sale v. United States, supra, said:

   "The distinction he [the District Court in House] draws is that as a matter of fact the work papers of the accountant regarding the taxpayer's return in the Sale case were the property of the accountant while in the matter before him the work papers were the property of the taxpayer, apparently raising the question of ownership of the work papers. This Court has a great deal of difficulty in determining whether this question is one of fact or one of law, but it seems only logical that, inasmuch as the Court of Appeals in the Sale case has affirmed the finding that the work papers are the property of the accountant, this finding should point the way, so to speak, for a District Court that is confronted with a case of similar facts, as the Court is here, unless and until a higher court in this Circuit has held otherwise, or the facts of the particular matter before the Court clearly demonstrate that the work papers are the property of the taxpayers." 175 F.Supp. at 890.

pacity." [4]  In *Daniels,* Judge Kaufman held the records sought privileged despite their being corporate records because in the "unique corporate situation" to which the decision was limited they were, nevertheless, held in a purely personal capacity.[5]  In *House* the court held the work papers protected because ownership had been transferred by the accountant to the taxpayer.[6]

### III

In the instant case the work papers sought by the government were "given" by accountant Weinberg to the taxpayer's attorney, Silverstein, who, in turn, "gave" them to taxpayer Levy.  However, the record is barren of direct testimony or substantial circumstantial evidence from which the Court may reasonably determine the intention of the parties at the time of these transfers. The petitioner's evidence on this issue was unnecessarily meager; the respond-

ents rested on this deficiency and offered no testimony.

Agent Brogan's testimony that Weinberg at one time "indicated he would request the return of these documents" has little probative value.  Although it may indicate the accountant's intention to repossess papers over which he considered he retained ownership, the statement may also give rise to the inference that Weinberg was merely offering to aid Brogan in obtaining documents previously transferred and rightfully possessed by Levy.  In any event, Weinberg never did demand a return of the papers and this, alone, may well indicate a disclaimer of any possessory rights to them.  Compare *Pizzo, Fahey* and *Deck.*

Thus the evidence before the Court has no convincing force, one way or the other, as to whether Weinberg retained ownership of the documents and merely temporarily submitted them to Silver-

4. *Cohen* distinguished *Fahey* and *Deck* with the court stating:
   "The taxpayers in those cases could not claim the rightful and indefinite possession, since the accountants, found to have been the owners, had demanded that the work papers be given to the government [*Fahey*] and that they be returned [*Deck*]."  250 F.Supp. at 475.

5. The court said:
   "We are dealing exclusively with a corporation which concededly is resident in a foreign state and concededly has never done business in this country, while petitioner, its president and sole stockholder, is a United States citizen. In these circumstances, it is not inconceivable that petitioner has custody of the books for his own personal purposes, and the facts in this case, coupled with the government's admission that the summons is addressed to petitioner not as a representative of the Corporation but in his individual capacity, lend weight to petitioner's claim of personal capacity and give it credence."  140 F.Supp. at 327–328.

6. As in the other cases the court in *House* decided whether the work papers were privileged on the basis of the facts and circumstances before it, stating:
   " * * *  the property in these documents is clearly in the taxpayers.

They directed Wood to turn them over to themselves or their agents, and Wood did so, as he testified, with no intention of retention of any title, or belief that he could get them back. There is no dispute between accountant and client as to who owns the papers.  The government relies on the words 'express agreement' in the statute [Cal.Bus. and Prof.Code, § 5130], apparently reading it as 'express contract' so as to require a contract satisfying the normal standards of an executory contract.  There was an express direction by the taxpayers to the accountant to turn over the documents. The accountant complied.  Whether this was a gift, a unilateral contract in which the terms were expressly stated by the taxpayers and performed by the accountant, or even an executory contract in which the taxpayers stated the express terms and offered as an implied consideration continued employment of the accountant, is a matter of academic dispute.  It is clear enough that there was an express agreement between the accountant and the taxpayers that ownership in the papers should become vested in the taxpayers at the moment of transfer of the papers to the taxpayers' agents.  Thus, even under the California statute, the papers are the property of the taxpayers."  144 F.Supp. at 102.

stein or whether he relinquished his interest in the papers so that Levy now owns them or has legitimate and personal possession of them. The scales are in equal balance.

Accordingly, the application of the government is denied.