**UNITED STATES of America,**

v.

**Ben J. SLUTSKY and Julius Slutsky,
d/b/a The Nevele, Ellenville, New
York, Defendants.**

**No. 72 Cr. 1235.**

United States District Court,
S. D. New York.

Dec. 29, 1972.

Louis Bender, New York City, for defendant Ben J. Slutsky.

Moses L. Kove, New York City, for defendant Julius Slutsky.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, New York City, for the United States; David M. Brodsky, Asst. U. S. Atty., of counsel.

## OPINION

MacMAHON, District Judge.

This is a motion under Rule 17(c), Fed.R.Crim.P. to compel the production of business records, pursuant to a subpoena duces tecum, of a two-man partnership for use upon the trial of the partners for wilful subscription to false partnership and personal tax returns (26 U.S.C. §§ 7206(1), 7201). The defendant partners oppose the motion and move to quash the subpoena on the ground that their Fifth Amendment privilege against self-incrimination immunizes the records from production.[1]

---

[1]. The partners also claim that the production of the records is not permitted by Rule 17(c), Fed.R.Crim.P., because the government has not shown sufficient good cause for their production. See United States v. Iozia, 13 F.R.D. 335 (S.D.N.Y. 1952). Our finding that the records are protected by the Fifth Amendment removes the need for considering whether sufficient good cause has been shown.

The government contends that the records are not privileged from compulsory production by the Fifth Amendment because of the size and scope of the partnership.

The partnership, consisting solely of two brothers, operates a resort known as the Nevele Country Club. The resort was originally opened in 1901 by the father of the partners. It consists of a hotel with 325 guest rooms with many facilities on a 1,000 acre tract of land in Ellenville, New York. The Nevele has a payroll of about $1,000,000, gross receipts of $4,000,000, buildings worth about $4,400,000, and a convention sales office in New York City. It employs several full-time and part-time cashiers, a full-time bookkeeper, and a full-time accountant. The partners live on the resort premises and personally manage it full time along with their two sons. These four are the only persons authorized to draw checks on the partnership.

■ The privilege against self-incrimination applies only to natural persons; it is purely personal and, thus, does not apply to corporations. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L. Ed. 652 (1906). The law, however, clearly distinguishes a partnership from a corporation. Unlike the officer of a corporation, the partners in a partnership are really co-owners of all the partnership property, including the partnership papers. While partnership ownership is shared, it is, nonetheless, personal and, consequently, the business records of a partnership are really the personal records of each of the partners. Traditionally, therefore, partnership records have been constitutionally privileged under the Fifth and Fourth Amendments from compulsory production in a criminal prosecution. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); United States v. Brasley, 268 F. 59 (D.C.W.D.Pa.1920); In re Subpoena Duces Tecum, 81 F. Supp. 418 (D.N.D.Cal.1948).

■ Contemporary authority teaches, however, that the form of a business entity is not determinative of whether its records receive the protection of the Fifth Amendment.

"The test, rather, is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common interests only." United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944).

The application of this test is essentially factual. United States v. Silverstein, 314 F.2d 789 (2d Cir. 1963).

■ *White* also recognized that, because the privilege is personal, the Fifth Amendment does not apply to papers of an association held by a custodian in a representative capacity on behalf of a collective group, regardless of the size of the organization. United States v. White, *supra*, 322 U.S. at 698, 64 S.Ct. 1248, 88 L.Ed. 1542. See, McPhaul v. United States, 364 U.S. 372, 380, 81 S. Ct. 138, 5 L.Ed.2d 136 (1960).

■ Under either test, the privilege against self-incrimination applies to the records sought here.

If the Nevele were owned by a sole proprietor, there can be no question that the records would be immune from production under the Fifth Amendment. The reason for such protection does not change because there is a shared proprietorship in this case.

The government argues, however, that the nature of the partnership in size, scope, and impersonality warrants treating the partnership as a corporation and cites In re Mal Bros. Contracting Co., 444 F.2d 615 (3d Cir.), cert. denied, 404 U.S. 857, 92 S.Ct. 106, 30 L.Ed.2d 99 (1971), and United States v. Quick, 336 F.Supp. 744 (E.D.N.Y.1972). Neither case is applicable here.

In *Mal Bros.*, the court forced a partnership in the engineering business to produce its business records because

"the defendants . . . had all the aspects of a corporate enterprise and . . . there was nothing personal or private in connection with the papers . . . ." 444 F.2d at 619. While not describing the size of the partnership, the court noted that the partners were not involved personally in either the engineering or the accounting and bookkeeping end of the business.

In contrast, the partners here give their personal attention to the day-to-day business activities of the partnership. Only the partners and their two sons can sign checks, and all four live on the resort premises. They are familiar with the firm's accounting and bookkeeping because they have only one full-time accountant and bookkeeper. While Mal Bros. had all the aspects of a corporate entity, the Nevele has only the size, not the nature, of a corporation.

◼ Size alone is not sufficient to warrant treatment as a corporation. The Supreme Court in *White* emphasized the nature of the group associated, as well as its size. Following *White* this court has held that size alone is not determinative of whether the Fifth Amendment applies. United States v. Cogan, 257 F.Supp. 170, 174 (S.D.N.Y. 1966). Rather, focus is placed on the extent and nature of the ownership group. United States v. Silverstein, *supra*; In re Subpoena Duces Tecum, *supra*.

The nature of the ownership group is the key in United States v. Quick, *supra*, relied upon by the government. *Quick* ruled that, in order to preserve a Fifth Amendment privilege for partnership records, the partnership must make a showing that "the firm's books are owned by its partners (*de facto* and *de jure* . . .) and whether or not they genuinely are private or personal books or records in any vital sense." United States v. Quick, *supra*, 336 F. Supp. at 745. Assuming that *Quick* states the law, see United States v. Cogan, *supra*, we believe that the partners here have shown that the partnership and its books were genuinely private.

◼ A two-man partnership consisting of two brothers is obviously as small as possible. This small family partnership is not so impersonal in the scope of its membership and activities that it cannot represent the purely private or personal interests of its constituents. Some partnerships consisting of a large number of partners, some special or limited as well as general, might be so impersonal in the scope of the membership and activities that the firm does not embody the personal or private interest of the constituent partners. Surely this two-brother family partnership does not reach such status. It contrasts dramatically with the limited partnerships consisting of three general partners and from 25 to 147 limited partners found not to be protected by the Fifth Amendment in *Silverstein*. Rather than an impersonal and detached business owned by absentees with all the aspects of a corporation, the Nevele hotel appears to be a personal family business, albeit large and successful. The records sought here, therefore, are not merely "impassive and impersonal records of business events transacted between the firm and those with whom it dealt." United States v. Quick, *supra*, 336 F.Supp. at 746.

◼ The government, citing *Mal Bros.* once again, contends that the small size of the membership is immaterial. It claims that "it was not essential to . . . the Supreme Court's opinion in *White* that a court examine the size, impersonality, or other circumstances." The government's reliance on *Mal Bros.* and the cases cited therein is misplaced. *Mal Bros.* refers not to the first test set forth in *White*, but to the second test for denying the books of business entities the protection of the Fifth Amendment, *i. e.*, those holding such records in a representative capacity may not withhold documents under a Fifth Amendment privilege. When documents are held by a representative, the size or character of the group that the person represents is immaterial because the privilege is a personal one, not one that

a representative may claim. Only in such circumstances can size and nature of the business entity be ignored. United States v. White, *supra*, 322 U.S. at 698–700, 64 S.Ct. 1248, 88 L.Ed. 1542. The records here are not kept in any representative capacity, but only for the personal and private business use of the general partners. Under both tests taught by *White*, therefore, the Fifth Amendment demands that the instant subpoena be quashed.

Almost parenthetically, the government also claims that the production of the accountant's work product is justified independently because the partners did not prepare it.

 The general rule applicable to accountant's work product is clear. The partnership may successfully prevent disclosure of the accountant's work product only if the partnership owns the work product or holds it for purely personal use. United States v. Zakutansky, 401 F.2d 68 (7th Cir. 1968); United States v. Levy, 270 F.Supp. 601 (D. Conn.1967). Because the accountant here works exclusively for the partnership, we find that his work product is owned by the partnership.

 This case is different from the usual one where the government requests the work product of an independent accountant with many clients. *E. g.*, United States v. Widelski, 452 F.2d 1 (6th Cir. 1971). In such a case, the accountant is hired to perform specific tasks by one of many clients. His work product becomes important to him in order that his records are complete for each client. He, therefore, generally keeps the work product in his own files in his own office. In this case, the accountant is hired not for specific tasks,

but rather as a full-time employee to monitor all the financial data of the partnership. Any work product is a part of the general financial controls. Unlike the independent accountant, the accountant here has no office nor files of his own. Rather, he maintains the files of the partnership on partnership property.[2] The inventions and literary products produced by an employee hired for the purpose of producing them belong to his employer. Hobbs v. United States, 376 F.2d 488 (5th Cir. 1967). Similarly, the work product of an accountant hired full time for the purpose of keeping his employer's records belongs to his employer.

Accordingly, the government's motion to compel the production of books, papers and documents is denied. The defendants' motion to quash the government subpoena duces tecum is granted.

So ordered.

---

2. The record is somewhat sparse on the details of the accountant's employment. It is clear, however, that the accountant was employed full time by the partnership. We infer from that and from the fact that the business was conducted on the partnership premises that the accountant worked in an office belonging to the partners with no files of his own.

Even if we are incorrect, our decision would not be affected. The burden of showing that the accountant owned the records is on the government. United States v. Levy, 270 F.Supp. 601 (D.Conn. 1967). It has presented no evidence in support of its contention. Even discounting our inferences, therefore, the government has not proven its case.