**In the Matter of SEPTEMBER, 1975 SPECIAL GRAND JURY.**

**Misc. No. 300.**

United States District Court,
N. D. Indiana,
Hammond Division.

June 17, 1977.

**540**

Martin H. Kinney, Merrillville, Ind., Thomas R. Fadell, Gary, Ind., for petitioner.

U. S. Atty. Richard L. Kieser, N. D., Ind., South Bend, Ind., Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for the United States, respondent.

## MEMORANDUM DECISION

McNAGNY, District Judge.

This matter is before the Court on the Motion of Thomas R. Fadell, by counsel, to quash a subpoena duces tecum duly issued to him by the September, 1975 Special Grand Jury for this District. The subpoena requires the production of the books and business records of the business entity known as Mansard du Lac, with which the witness Thomas Fadell is associated.

A hearing was conducted on the motion on April 28, 1977, at which the petitioner was represented by counsel and evidence and oral argument were received by the Court. The sworn testimony of witnesses and other credible evidence admitted at the hearing of this matter are the basis for the following Findings of Fact:

1. The September, 1975 Special Grand Jury issued and caused to be served upon Thomas R. Fadell a subpoena duces tecum requiring the production of certain records of Mansard du Lac, allegedly a partnership. Said subpoena was served on April 18, 1977, and required the presence of the witness with the documents on April 28, 1977.

2. The subpoena is not overly broad and specifies with particularity the documents to be produced.[1]

3. The entity Mansard du Lac was formerly known as Town and Country Mobile Home Estates.

4. Town and Country Mobile Home Estates was established in approximately 1969. At the establishment of Town and Country Mobile Home Estates the witness Fadell and his spouse owned a one-half (½) interest and another couple, Larry and Vernie Stevens, owned the remaining one-half (½) interest.

5. No written instrument memorialized the agreement between the owners of Town and Country Mobile Home Estates.

6. Town and Country Mobile Home Estates was formed to run, build and operate a mobile home park. Each of the four owners contributed one-fourth (¼) toward funding the mobile home park.

7. The witness Thomas Fadell kept the books and records of Town and Country Mobile Home Estates. The witness did not receive a salary for his efforts.

8. In approximately 1970 or 1971, Thomas Fadell and his spouse equally contributed to purchase the interests of Larry Stevens and Vernie Stevens and changed the name of the business

---

1. The subpoena required production of the following records of Mansard du Lac for the calendar years 1971 through 1975: check stubs, cancelled checks, bank statements, deposit slips; sales invoices, cash disbursement jour-nals, cash receipt journals; sales journals, general journals, general ledgers; partnership agreements, partnership correspondence, accounting statements and payroll ledger books.

to Mansard du Lac. Again, no written instrument memorialized the business relationship.

9. Neither Thomas Fadell nor his wife have ever received a salary for their efforts in managing Mansard du Lac.

10. Profits derived from the operation of Mansard du Lac have been divided equally between Thomas Fadell and his spouse, Barbara. Fadell.

11. Thomas R. Fadell maintained the books and records of Mansard du Lac and kept said books and records within his custody and control.

12. The business entity maintains stationery or letterheads in the name of Mansard du Lac. The business also advertises under the name of Mansard du Lac.

13. Some business transactions in the mobile home park are conducted by Thomas Fadell personally and not as Mansard du Lac. This business is carried on separate books and is reported separately on Thomas Fadell's personal income tax returns.

14. Federal partnership tax returns in the name of Town and Country Mobile Home Estates were filed for the calendar years 1970 and 1971.

15. Federal partnership tax returns were filed by Mansard du Lac for the calendar years 1972 through 1975.

16. Both Thomas Fadell and Barbara Fadell have signed tax returns in the capacity as partners of the entity Mansard du Lac.

The principal issue presented for decision is whether the documents sought by the Grand Jury are of such a nature that the petitioner, Thomas R. Fadell, may assert the Fifth Amendment privilege against self-incrimination with respect to their production. In order to resolve this issue it is necessary to determine the character of the business entity involved and petitioner's relationship to that entity.

## A. *Mansard du Lac is a Partnership.*

A crucial first step in deciding whether the books and records of a business entity are subject to a subpoena duces tecum is determining the nature of the business enterprise. The facts developed at the hearing coupled with the commercial law of the State of Indiana lead the Court to conclude that Mansard du Lac is in fact and law a partnership.

At the hearing of April 28, 1977, Thomas R. Fadell testified that he and his wife, Barbara, were the co-owners of Mansard du Lac. Mr. Fadell further testified that he and his wife contributed equally to the business and each expected to share equally in any profits. Mr. Fadell related that since the enterprise took the name Mansard du Lac in approximately 1970, advertisements, stationery and letterheads have employed that assumed name. The petitioner testified that in recent years Mansard du Lac has filed federal partnership tax returns. This was verified by a witness from the Internal Revenue Service who produced copies of those partnership tax returns for the years 1972 through 1975.

Indiana partnership law is contained in I.C. 23–4–1–1 (1976), *et seq.*, the Uniform Partnership Act. I.C. 23–4–1–7 (1976) establishes rules for determining the existence of a partnership. Under that section, the sharing of profits is prima facie evidence of partnership. No facts were produced to destroy the inference that Thomas and Barbara Fadell were in fact partners in the operation of the mobile home park. On the contrary, Mr. Fadell testified that neither he nor his spouse drew a salary, but shared the profits equally. The fact that no express partnership agreement was entered into is irrelevant to the legal existence of a partnership. *Trojnar v. Bihlman*, 136 Ind.App. 263, 200 N.E.2d 227 (1964).

While the decision of the Fadells to file partnership tax returns is not in itself determinative, it does provide insight as to how the parties themselves viewed their relationship. Evidence of joint control over the affairs of Mansard du Lac is further provided by the fact that Barbara Fadell signed at least one federal partnership tax

return representing both partners. This contradicts the testimony of Thomas Fadell that the enterprise was operated solely by him.

The testimony of Thomas Fadell at the hearing on the motion to quash the subpoena, Indiana partnership law, and the filing of partnership tax returns combine to persuade the Court that Mansard du Lac is in fact a partnership.

B. *The Partnership Mansard du Lac is an Independent Institutional Entity and its Records are Subject to Production.*

The relationship between a business enterprise and the privilege against self-incrimination has tortuously developed over the years. Corporation have long been held subject to the subpoena power of the Court of Grand Jury despite any claimed personal Fifth Amendment rights. *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). The governmental authority to subpoena corporate books and records has historically been founded on the chartering state's "visitorial powers" and the fact that such records are held in only a representative capacity by the person asserting the privilege. *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

Since the privilege against self-incrimination is purely personal, it cannot be exercised on behalf of a corporation or other separate business entity. *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). In the case of *United States v. White, supra,* the Supreme Court developed a more meaningful test to determine when an entity may claim the protection of the Fifth Amendment. In *White,* the Supreme Court was called upon to decide whether a labor union could be forced to produce its records for a grand jury investigation. In the majority opinion written by Justice Murphy, the court advanced a test to determine when the privilege may be available:

"The test, rather, is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only. If so, the privilege cannot be invoked on behalf of the organization or its representatives in their official capacity. Labor unions— national or local, incorporated or unincorporated—clearly meet that test." 322 U.S. at 701, 64 S.Ct. at 1252, 88 L.Ed. at 1547.

Until recently, courts considering the production of partnership records have generally held such records protected by the Fifth Amendment's prohibition of compelled self-incrimination. *In re Subpoena Duces Tecum,* 81 F.Supp. 418 (N.D.Cal. 1948); *United States v. Brasley,* 268 F. 59 (W.D.Pa.1920), *United States v. Lawn,* 115 F.Supp. 674 (S.D.N.Y.1953); *United States v. Linen Service Council,* 141 F.Supp. 511 (D.N.J.1956); *United States v. Slutsky,* 352 F.Supp. 1105 (S.D.N.Y.1972). These cases have held the Fifth Amendment's privilege applicable to a partner in possession of partnership records by reliance on the Supreme Court's holding in *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). *Boyd* has long stood for the proposition that the private papers and effects of an individual are protected by both the Fourth and Fifth Amendment privileges. The cases which extended Fifth Amendment protection to partnership papers were premised on the argument that "[W]hile partnership ownership is shared, it is, nonetheless, personal and, consequently, the business records of a partnership are really the personal records of each of the partners." *United States v. Slutsky,* 352 F.Supp. at 1107.

The Supreme Court has recently considered the question of partnership records in the case of *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). In *Bellis,* a former partner of a dissolved three-member law partnership in possession of partnership records argued that the Fifth Amendment privilege against self-incrimination protected said records from a

grand jury subpoena duces tecum. The Supreme Court, relying on its earlier opinion in *United States v. White, supra,* held that the privilege was not available since the partnership had an institutional identity and the petitioner held the records in a representative, not a personal, capacity.

Prior to the *Bellis* decision, those cases which held the Fifth Amendment privilege unavailable to partnerships generally involved large impersonal organizations whose identity was obviously separate from the individual partners. *In re Mal Brothers Contracting Co.,* 444 F.2d 615 (3rd Cir. 1971), cert. denied, 404 U.S. 857, 92 S.Ct. 106, 30 L.Ed.2d 99 (1971), *United States v. Silverstein,* 314 F.2d 789 (2nd Cir. 1963), cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963), *United States v. Wernes,* 157 F.2d 797 (7th Cir. 1946). *Bellis* holds that size alone is not the determinative factor. Instead, the critical issue is whether the partnership represents a distinct institutional arrangement. *Bellis v. United States,* 417 U.S. 85, 95, 94 S.Ct. 2179, 2187, 40 L.Ed.2d 678, 688 (1974).

The majority in *Bellis, supra,* held that a partner holds partnership where the records are subject to the rights guaranteed to other partners under state partnership law. *Bellis, supra,* 417 U.S. at 99, 94 S.Ct. at 2188, 40 L.Ed.2d at 690. In the case of the law partnership in *Bellis,* the Supreme Court pointed out that under the Uniform Partnership Act records are partnership property and an individual partner's interest is a derivative interest subject to limitations. *Bellis, supra,* 417 U.S. at 99, 94 S.Ct. at 2188, 40 L.Ed.2d at 690.

█ In the case of Mansard du Lac, the partnership between Thomas Fadell and Barbara Fadell is subject to the same Uniform Partnership Act provisions as were applicable in the *Bellis* case. The fact that the partners in Mansard du Lac are husband and wife does not alter the applicability of Indiana partnership law. A partner-

ship under the law of Indiana is no less bound by the provisions of the Uniform Partnership Act simply because the partners share a family relationship. *Puzich v. Pappas,* Ind.App., 314 N.E.2d 795 (1974).[2] Throughout the existence of Mansard du Lac, the partnership records maintained by Thomas Fadell were always subject to the rights guaranteed by law to Barbara Fadell. As a partner Barbara Fadell could demand access to partnership books. I.C. 23–4–1–19 (1976). If necessary she could enforce her rights by demanding a formal accounting in a legal action. I.C. 23–4–1–20 and I.C. 23–4–1–21 (1976). Under the provisions of Indiana partnership law, Thomas Fadell maintained the books and records of Mansard du Lac in a representative capacity subject to rights guaranteed his co-partner.

While application of state partnership law supports the finding that the records of Mansard du Lac were maintained in only a representative capacity, the evidence introduced at the hearing of April 28, 1977, points to a conclusion that the instant partnership represents a distinct institutional identity apart from the petitioner. Evidence of a separate institutional identity is found in the testimony of the petitioner that " . . . some of the business in the [trailer] park is conducted by me personally, not as Mansard du Lac." Upon further examination the petitioner testified that this personal business was carried on separate books and reported on the petitioner's income tax returns separately from the profits derived from Mansard du Lac. This testimony reveals that the petitioner himself regards Mansard du Lac as a separate institutional entity.

The Seventh Circuit has recently considered the applicability of the Fifth Amendment privilege against self-incrimination to a small partnership. In the case of *United States v. Kuta,* 518 F.2d 947 (7th Cir. 1975), cert. denied; 423 U.S. 1014, 96

---

2. In *Puzich,* two brothers brought an action to dissolve a partnership with their sister. After the trial court judge found there was not sufficient evidence to establish the sister as a partner, the Indiana Court of Appeals reversed, citing partnership tax returns shared profits as evidence leading solely to the conclusion that the sister was a partner.

S.Ct. 446, 46 L.Ed.2d 385 (1975), the Court relied upon *Bellis, supra,* in holding that a partner in a two man law partnership could not assert the privilege against self-incrimination. The Court held that the partnership constituted an independent institutional identity under Illinois partnership law by which the petitioning partner held records only in a representative capacity.[3] The Seventh Circuit in *Kuta* relied on the same indices as *Bellis* to determine if the partnership constitutes an independent institutional identity: (1) Control of records regulated by state partnership law; (2) Access to books guaranteed to others; and (3) Accountability to the partnership. *Bellis, supra,* and *Kuta, supra,* have recently been followed by other courts considering this issue in relation to law partnerships. *In the Matter of the Witness Berry,* 521 F.2d 179 (10th Cir. 1975), cert. denied, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975), *In the Matter of Grand Jury Proceedings,* 399 F.Supp. 668 (D.N.J.1975).

The petitioner seeks to distinguish the holding in *Bellis* on the basis of dictum in that decision to the effect that " . . . [T]his might be a different case if it involved a small family partnership, (citations omitted) or, as the Solicitor General suggests, (citation omitted) if there were some pre-existing relationship of confidentiality among the partners." *Bellis v. United States,* 417 U.S. 85, 101, 94 S.Ct. 2179, 2189, 40 L.Ed.2d 678, 691 (1974). The petitioner argues that as the relationship between husband and wife is inherently private and personal, partnerships involving only a husband and wife may assert the privilege against self-incrimination.

■ In response to the petitioner's argument it must first be pointed out that while *Bellis* raised the possibility of partnerships which might assert the privilege against self-incrimination, the petitioning partner still bears the burden of showing that books and records are not subject to production. *United States v. Quick,* 336 F.Supp. 744

(E.D.N.Y.1972). A bare assertion of the Fifth Amendment or assertion that the material is personal does not meet the burden of showing that the material sought is genuinely private or personal. *Quick, supra,* at p. 745. In the instant case, although Mr. Fadell asserts that the books and records of Mansard du Lac are personal, his testimony regarding the partnership does not support this contention.

■ The presence of dictum in the *Bellis* opinion regarding small family partnerships does not imply that the Court would in fact hold that small family partnerships may assert the Fifth Amendment privilege. It is a well defined policy of the Supreme Court to decide cases on the most narrow basis available. It is the Court's practice not to formulate a rule of constitutional law broader than is required by the precise facts to which it is applied. *Ashwander v. T. V. A.,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion of Justice Brandeis at 297 U.S. 346–348, 56 S.Ct. 480); *Liverpool, N. Y. & P. S. S. Co. v. Emigration Commissioner,* 113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899 (1885). As the *Bellis* decision did not involve a small family partnership it is understandable that the Court would desire to leave that question open until that issue is properly before the Court. While the petitioner argues that the *Bellis* case can be distinguished due to the family character of this particular partnership, Justice Douglas concluded that the holding of the majority in *Bellis* was equally applicable to small family partnerships. In his dissenting opinion, Justice Douglas specifically addressed the issue of husband-wife partnerships:

" . . . By the Court's opinion a man and wife who form a law partnership or medical partnership or dental partnership are treated as some kind of new 'entity' so as to expand the power of government into an area from which the Fifth Amendment excludes it . . . " *Bellis v. United States,* 417 U.S. 85, 103, 94

---

**3.** Illinois has adopted the Uniform Partnership Act. Ill.Rev.Stat. Ch. 106½ §§ 1–43. Indiana, as previously indicated, has also adopted the Uniform Partnership Act. I.C. 23–4–1–1 (1976), *et seq.*

S.Ct. 2179, 2190, 40 L.Ed.2d 678, 692 (1974).

The *Bellis* majority also indicated that the outcome might be different if there were some preexisting relationship of confidentiality among the partners. Despite the fact that the partners in Mansard du Lac are husband and wife, the record does not demonstrate a prior confidential relationship as to this enterprise. On the contrary, the record reveals that the entity now known as Mansard du Lac was formerly known as Town and Country Mobile Home Estates, in which there were additional partners, hence less confidentiality.

 The mere fact that a husband and wife relationship exists between owners or operators of a business entity is not determinative of whether the entity or its members may assert the privilege against self-incrimination. The law is clear, for instance, that a husband and wife who are sole owners of a corporation cannot assert the privilege to refuse to produce corporate records, even if such records are incriminating. Corporate records are subject to production even if it is a "one-man" corporation. *Hair Industry Ltd. v. United States,* 340 F.2d 510 (2nd Cir. 1965), cert. denied, 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965).

 The husband-wife relationship does give rise to an evidentiary privilege which may be asserted by one spouse against testimony by the other as to events taking place during the marriage relationship. Rule 501, Federal Rules of Evidence. This evidentiary privilege does not rise to constitutional dimensions, and is not to be confused with the Fifth Amendment privilege against self-incrimination.

The Court has discovered two reported cases decided after *Bellis* in which a member of a small family partnership has asserted the privilege against self-incrimination when confronted with compelled production of partnership records. In *United States v. Mahady & Mahady,* 512 F.2d 521 (3rd Cir. 1975) a law partnership of four brothers sought to distinguish *Bellis,* relying on that opinion's statement regarding small family partnerships. The Third Circuit refused to distinguish *Bellis* despite the intra-family relationship of the partners. In *Streter v. Hynes,* 419 F.Supp. 546 (E.D. N.Y.1976), a mother and son operating a nursing home as a small family partnership sought to assert the Fifth Amendment privilege against self-incrimination, again relying on the language in *Bellis* relating to small family partnerships. While the district court's decision refusing to acknowledge the privilege was based on multiple grounds, the court reasoned that state law regulating conduct of the nursing home prevented any reliance on *Bellis.* In the instant case, state law also limits the rights of partners through the Uniform Partnership Act.

 Whether or not a partnership has an institutional identity separate and distinct from its partners, so as to prevent the individual partners from asserting the Fifth Amendment privilege as to partnership property in their possession, is a question for the factfinder to determine. *United States v. Silverstein,* 314 F.2d 789, 791 (2nd Cir. 1963), *United States v. Slutsky,* 352 F.Supp. 1105, 1107 (S.D.N.Y.1972).

The facts surrounding the partnership Mansard du Lac reveal that the partnership between Thomas Fadell and Barbara Fadell arose by simply changing the name of a prior business partnership involving two additional partners. The facts further show that Thomas Fadell conducts some business transactions at the trailer park in his own name and some in the name of Mansard du Lac. Business transacted under the name of Mansard du Lac is accounted for on separate records and reported separately for tax purposes. The facts also reveal that Mansard du Lac holds itself out to the world as a separate entity through the use of advertising and a letterhead under that name.

 Applying the law as announced in *Bellis* and developed in its progeny to the facts in the instant case, the Court concludes that the Fifth Amendment privilege against self-incrimination is unavailable to

the petitioner, notwithstanding the husband and wife character of the partnership, Mansard du Lac.

█ The provisions of Indiana partnership law as applied to the facts in this case lead to a conclusion that Thomas Fadell holds the records of Mansard du Lac in only a representative capacity. The partnership books and records are subject to the rights guaranteed to each partner under the Uniform Partnership Act, and are the property of the partnership entity itself. The petitioner in maintaining the records is acting as a fiduciary for the entire partnership and not merely in his own interests.

█ The Court, under the facts presented in this case, sees no reason to afford the privilege against self-incrimination to the records of Mansard du Lac solely on the grounds that the partners are husband and wife. The private relationship between a husband and wife is protected from unwarranted state intrusion. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). However, the constitutional protection afforded the husband-wife relationship is rooted in the Fourth Amendment and does not protect a commercial relationship with a separate institutional identity. *United States v. Bellis, supra, United States v. White,* 322 U.S. 694, 64 S.Ct. 12, 48, 88 L.Ed. 1542 (1944). The Court by this decision expresses no opinion as to whether a husband and wife partnership can ·ever avail itself of the privilege against self-incrimination when ordered to produce partnership records.

For the foregoing reasons, the Court declines to quash the subpoena duces tecum issued by the September, 1975 Special Grand Jury. The Court hereby directs the petitioner to produce the subpoenaed books and records of the partnership Mansard du Lac at the time and place required by the Grand Jury.