**In re GRAND JURY SUBPOENA DUCES TECUM Dated November 13, 1984 (John DOE, Petitioner).**

**No. 84 CV 4756.**

United States District Court, E.D. New York.

March 25, 1985.

Lawrence S. Goldman, New York City, for petitioner.

Edward A. McDonald, U.S. Dept. of Justice, Organized Crime Strike Force, Bruce Maffeo, Sp. Atty., Brooklyn, N.Y., for U.S.A.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a motion by petitioner, John Doe, one of two partners in a consulting firm, to quash a grand jury subpoena *duces tecum.* Fed.R.Crim.P. 17(c). The subpoena is directed to petitioner as custodian of partnership records, and commands production of books and records from January 1, 1981 to the present, including cash receipts and disbursements, general ledgers, cancelled checks, bank statements and partnership tax returns. For the reasons developed below, the Court will conduct a hearing on the applicability of the act of production doctrine.

### Facts

Petitioner and his wife are sole partners in a consulting firm. The partnership was established in December 1980; prior to that time petitioner operated the business as a sole proprietorship. The firm has no employees, and no office outside petitioner's home. Its annual gross receipts from 1981 through 1983 averaged approximately $85,000, and average annual net income was approximately $44,000. The partnership files the required federal and state income tax returns separate from those filed by the two partners.

### Discussion

Petitioner initially contended that his refusal to produce the subpoenaed documents is privileged under the act of production doctrine, which is grounded in the Fifth Amendment privilege against self-incrimination. *United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). As petitioner conceded at oral argument, however, the threshold question is whether petitioner, as partner, has a Fifth

Amendment privilege to assert at all. *Transcript of Dec. 18, 1984 at 9–10.*

The Fifth Amendment privilege against self-incrimination is purely personal. *Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1972). It is not available to individuals possessing records of a corporation in a representative capacity, *United States v. White,* 322 U.S. 694, 699–700, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944), even if that individual is the sole shareholder of the corporation whose records are subpoenaed. *Hair Industry, Ltd. v. United States,* 340 F.2d 510, 511 (2d Cir.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965). On the other hand, an individual, as sole proprietor of a business, may assert a Fifth Amendment privilege even with respect to business records. *Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974).

Whether a partnership should be treated as a corporation or a sole proprietorship for Fifth Amendment purposes has been a troublesome question. In *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), a partner in a three-member law firm claimed a Fifth Amendment privilege to refuse to produce partnership records in his possession. The Court rejected his argument that the law firm represented nothing more than the personal legal practices of its partners. It held that when a partnership has "an established institutional identity independent of its individual partners," *id.* at 95, 94 S.Ct. at 2187, an individual partner may not withhold subpoenaed partnership records that he possesses in a representative capacity. *Id.* at 95–97, 94 S.Ct. at 2186–2187.

Analogizing the three-member law partnership to a corporation, which clearly has a distinct institutional identity, *see United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), the *Bellis* Court placed great emphasis on the extent to which a partnership, like a corporation, is regulated by state law, and on the fact that a partnership, like a corporation, must file a tax return separate from that filed by its

individual partners, officers or employees. *Bellis v. United States, supra,* 417 U.S. at 95–97, 94 S.Ct. at 2186–2187.

The *Bellis* Court specifically refused to hold, however, that a partner could never invoke the Fifth Amendment privilege with respect to partnership records. Indeed, the Court noted, in the last paragraph of its opinion, that "[t]his might be a different case if it involved a small family partnership, *see United States v. Slutsky,* 352 F.Supp. 1105 (S.D.N.Y.1972) ... or ... if there were some other pre-existing relationship of confidentiality among the partners." *Id.* 417 U.S. at 101, 94 S.Ct. at 2189 (citations omitted).

*Bellis* established a twofold inquiry for determining whether the privilege applies. First, does the partnership have a distinct institutional identity? Second, does the partner claiming the privilege hold the requested records in a personal or in a representative capacity? If the partnership has achieved an institutional identity and if the partner holds the records in a representative capacity, then *Bellis* denies Fifth Amendment protection to the partnership, and to its partners as well.

In considering the first question, *Bellis* instructs us to examine structure of the firm, *i.e.,* whether it is merely an informal or temporary agreement, how the firm is regulated by state law, how it holds itself out to third parties, and whether it files separate income tax returns. *Id.* at 96–97, 94 S.Ct. at 2187. This analysis would lead to the conclusion that the partnership here has an established institutional identity distinct from petitioner and his wife.

The partnership has existed since it was converted from a sole proprietorship in December 1980; it is not a temporary, informal arrangement. By choosing to conduct business in partnership form, petitioner acquired numerous rights and obligations under New York law. *E.g., N.Y. Partnership Law* § 20 (McKinney 1948) (partners agents of partnership for purposes of part-

nership business); *id.* § 40 (partners have equal rights in management and conduct of partnership business); *id.* § 41 (partners have equal right to inspect all partnership books); *id.* § 51 (partners are co-owners of specific partnership property). Additionally, when petitioner conducts business with third parties he binds the partnership by his conduct. *Id.* §§ 20, 24, 25. Finally, this partnership filed the required federal and state income tax returns separate from those of its principals. *See Bellis v. United States, supra,* 417 U.S. at 97, 94 S.Ct. at 2187.

The second question posed by *Bellis* is whether petitioner holds the subpoenaed records in a personal or representative capacity. As discussed *supra,* the subpoena is directed to financial records, bank statements and tax returns. Petitioner's subjective claim that he holds these records "only for his and his wife's personal and private business use," *Petitioner's Memorandum of Law at 5,* does not withstand the objective analysis required by *Bellis.* The documents subpoenaed are "merely the financial books and records of the partnership." *Bellis v. United States, supra,* 417 U.S. at 98, 94 S.Ct. at 2188 (footnote omitted). Petitioner holds them subject to rights granted other partners under New York law. He has no direct ownership interest in the records; under state law they are partnership property. *Id.; New York Partnership Law* § 41 (McKinney 1948). Petitioner thus holds these records in a representative capacity.

That said, it becomes obvious to the Court that a ritualistic, mechanical application of the *Bellis* test will almost invariably result in a holding that partnership records are never privileged. The reasons for this are clear.

The rights and obligations of partners under New York law, discussed above, are enumerated in the Uniform Partnership Act. The Act is presently in effect in 48 States as well as the District of Columbia,[1]

---

1. *See N.Y. Partnership Law,* Supp. 1984–85 1–2 (McKinney 1984) When *Bellis* was decided in

1974, that Act was in force in 41 States and the District of Columbia. *Bellis v. United States,*

and its provisions were discussed at length in *Bellis*. In all but two states, therefore, partnerships are heavily regulated by state law, which creates rights and obligations among partners that do not vary with the size of the partnership.

Similarly, all partnerships, no matter their size, must file income tax returns *qua* partnership, 26 U.S.C. § 6031 (1980 & Supp.1984). The *Bellis* Court emphasized this in its discussion of a partnership as a distinct entity. *Bellis v. United States, supra*, 417 U.S. at 97, 94 S.Ct. at 2187.[2]

Finally, it is impossible to imagine a partner who will be able to demonstrate, under the *Bellis* test, that he holds subpoenaed records in a personal capacity. As discussed above, and as was emphasized in *Bellis*, partnership records are partnership property; access to them, and control over them, is regulated by state partnership law. *Id.* at 98–99, 94 S.Ct. at 2187–2188. This, coupled with an artfully drawn subpoena, effectively precludes any partner from claiming he holds subpoenaed records in a personal capacity.

Given the difficulties inherent in satisfying the *Bellis* test, it comes as no surprise that neither the parties nor the Court could discover a reported post-*Bellis* case in which a partner successfully invoked the Fifth Amendment to block access to partnership records. Indeed, one district court has held that a husband-wife partnership conducting a mobile home business—arguably the type of partnership the *Bellis* Court may have intended to protect—could not invoke the Fifth Amendment to quash a subpoena *duces tecum*. *In re September, 1975 Special Grand Jury*, 435 F.Supp. 538 (N.D.Ind.1977). The Court reached that result by engaging in the precise analysis mandated by *Bellis*.

Nevertheless, it cannot be gainsaid that the *Bellis* Court envisioned some partners who could invoke the Fifth Amendment with respect to partnership records. *Bellis v. United States, supra*, 417 U.S. at 101, 94 S.Ct. at 2189. Indeed, the Court cited *United States v. Slutsky*, 352 F.Supp. 1105 (S.D.N.Y.1972) as an illustration of such a partnership.

In *Slutsky*, the government subpoenaed the business records of a two-man family partnership. The partners were brothers who operated a resort country club, where they lived and which they managed full-time with their sons. The business had a $1,000,000 payroll, gross receipts of $4,000,000, and owned buildings worth $4,400,000. Among the full-time employees were an accountant and a bookkeeper. *Id.* at 1107.

The Court quashed the subpoena, emphasizing that "[t]his small family partnership is not so impersonal in the scope of its membership and activities that it cannot represent the purely private or personal interests of its constituents." *Id.* at 1108. In so holding, the Court carefully distinguished the two-brother partnership from a larger "impersonal and detached business owned by absentees with all the aspects of a corporation." *Id.*

If, as *Bellis* suggests, there exists a partnership whose records are protected by the Fifth Amendment from compelled disclosure, petitioner's husband-wife consulting firm is it. The two criteria suggested in *Bellis* for the exception, a small family partnership, or one with a pre-existing relationship of confidentiality between partners, are both satisfied here. There are no employees, and no office outside the partners' home. It is a legal fiction to characterize this partnership as having an "established institutional identity independent of its individual partners." *Bellis v. United States, supra*, 417 U.S. at 95, 94 S.Ct. at

417 U.S. 85, 96 n. 5, 94 S.Ct. 2179, 2187 n. 5, 40 L.Ed.2d 678 (1974).

**2.** At this point the *Bellis* Court's comparison of partnerships to corporations becomes chimerical. Unlike corporations, partnerships are not taxed in their institutional capacity. 26 U.S.C.

§ 701 (1982). The partnership "is merely the conduit through which income passes to the taxpaying partners." *Bellis v. United States*, 417 U.S. 85, 103–04, 94 S.Ct. 2179, 91, 40 L.Ed.2d 678 (1974) (Douglas J., dissenting) (citing 26 U.S.C. §§ 701, 702 (1982 & Supp.1984)).

2187. It is equally a fiction to suggest that petitioner holds these subpoenaed records in a representative capacity, as suggested by *Bellis.* Although they are financial records, they "are not kept in any representative capacity, but only for the personal and private business use of the general partners." *United States v. Slutsky, supra,* 352 F.Supp. at 1109.

It seems clear that the *Bellis* Court contemplated that individual owners of the proverbial "Mom and Pop" stores would continue to enjoy the protection of the Fifth Amendment even though they elected to conduct business as a partnership. If the *Bellis* Court intended to hold that no partners could ever invoke the Fifth Amendment with respect to partnership records, it could easily have said so.

Permitting petitioner to assert a Fifth Amendment privilege in this instance is entirely consistent with *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), where the Supreme Court refused to permit a labor union, through its officer, to invoke the Fifth Amendment to quash a subpoena *duces tecum.* After discussing at length the history of the Fifth Amendment as a personal privilege, the Court stated:

> The test ... is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only. If so, the privilege cannot be invoked on behalf of the organization or its representatives in their official capacity.

*Id.* at 701, 64 S.Ct. at 1252. Under this test, a "Mom and Pop" partnership such as exists here is entitled to invoke the privilege.

■ Accordingly, I hold that *Bellis* is no bar to petitioner's assertion of the Fifth Amendment in opposition to this subpoena. The final question, therefore, is whether the claim of privilege covers the particular documents sought.

The Fifth Amendment protects against compelled testimonial self-incrimination. *United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 396, 96 S.Ct. 1569, 1573, 48 L.Ed.2d 39 (1976). When the creation of business records is voluntary, there is obviously no compulsion. *United States v. Doe, supra,* 104 S.Ct. at 1241. And a subpoena to produce documents "does not compel oral testimony; nor would it ordinarily compel [petitioner] to restate, repeat, or affirm the truth of the contents of the documents sought." *Id.* (quoting *Fisher v. United States,* 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976)).

■ Petitioner has not contended that he prepared these documents involuntarily, and nothing in the record suggests as much. Nor has petitioner contended that the subpoena would force him to restate, repeat, or affirm the truth of their contents. Accordingly, *Doe* and *Fisher* direct a holding that the contents of the records are not privileged. *See United States v. Doe, supra,* 104 S.Ct. at 1242.

Although the contents of the documents are not privileged, the act of producing them may be. *Id.; Fisher v. United States, supra,* 425 U.S. at 410, 96 S.Ct. at 1580. While the Court is doubtful these records deserve act-of-production protection, there is not a sufficient basis in the record for such a holding at this time, and the parties have not briefed the question to the Court's satisfaction.

Accordingly, the Court will conduct an evidentiary hearing on the applicability of the *Fisher* doctrine on April 11, 1985 at 10:00 a.m. The parties are directed to submit briefs on this issue not later than April 4, 1985.

SO ORDERED.