**In re Grand Jury Subpoenas Addressed to SENTINEL FINANCIAL INSTRUMENTS and Wachtell, Lipton, Rosen & Katz.**

**No. M11–188.**

United States District Court,
S.D. New York.

Oct. 18, 1982.

Wachtell, Lipton, Rosen & Katz, New York City, for movants; Bernard W. Nussbaum, Paul Vizcarrondo, Jr., Barry A. Weprin, New York City, of counsel.

John S. Martin, Jr., U.S. Atty. for the S.D.N.Y., New York City, for the government; Charles Carberry, Asst. U.S. Atty., New York City, of counsel.

## OPINION

TENNEY, District Judge.

This is a motion under Federal Rule of Criminal Procedure 17(c) by Sentinel Financial Instruments ("SFI") and Michael Senft ("Senft"), a principal of SFI, to quash grand jury subpoenas requiring the production of SFI business documents. The subpoenas were served on SFI and Wachtell, Lipton, Rosen & Katz ("Wachtell, Lipton"), SFI's counsel. The movants claim that Senft is entitled to assert his Fifth Amendment privilege against self-incrimination to immunize SFI's records from production and that the documents in possession of Wachtell, Lipton are protected by the attorney-client privilege.

For the reasons stated below, the motion to quash the subpoenas is denied.

### Background

SFI is a limited partnership created pursuant to New York law (N.Y. Partnership Law § 91 (McKinney 1948) (hereinafter N.Y. Partnership Law)). It acts primarily as a broker-dealer in the trading of government securities. The firm is a registered broker-dealer in New York State and employs approximately twenty individuals. SFI and Senft, SFI's sole general partner, are currently targets of a grand jury investigation. As a consequence, SFI and Wachtell, Lipton were served with subpoenas requiring the production of SFI documents. By the present motion they seek to quash the subpoenas. With regard to the subpoena served on SFI, Senft contends that he should be able to assert his Fifth Amendment privilege against self-incrimination to shield the documents from the purview of the grand jury. He argues that, since he controls the management of SFI and owns 98% of the company, it is, in effect, a sole proprietorship. Alternately, he argues that SFI is a small family partnership that may be treated as a sole proprietorship under the relevant case law.

In support of these arguments he points out that SFI consists only of himself and two limited partners, the Jenifer E. Senft Trust and David Senft. Jenifer is Senft's daughter and David is his brother. Senft owns a 98% interest in the losses and profits of the business. Each of the limited partners owns a 1% interest in SFI's profits. By law, their losses are limited to their capital contribution. N.Y. Partnership Law § 106.

The government, on the other hand, contends that SFI is a limited partnership with a separate institutional identity and, therefore, is not entitled to assert the general partner's privilege against self-incrimination.

With regard to the subpoena served on Wachtell, Lipton, the movants argue that the documents in Wachtell, Lipton's possession are protected by the attorney-client privilege. The government, however, contends that the privilege does not apply since the documents are not covered by Senft's

personal privilege and, even if they were, the documents in the hands of Wachtell, Lipton were received from a third party thus precluding the application of the attorney-client privilege.

### Discussion

■ The Fifth Amendment privilege against self-incrimination is purely a personal privilege, *Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974); *Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1972); *United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944), and does not extend to individuals who possess records of an organization in a representative capacity. *Bellis, supra,* 417 U.S. at 89, 94 S.Ct. at 2183; *United States v. White, supra,* 322 U.S. at 699–700, 64 S.Ct. at 1251 (1944). Therefore, officers of incorporated or unincorporated associations may not claim the privilege to preclude the production of records pursuant to a grand jury subpoena. *Bellis, supra; United States v. White, supra; Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911). Even the smallest of corporations— those consisting of only one shareholder— may not rely on the Fifth Amendment privilege to shield its records from a government investigation. *Hair Industry, Ltd. v. United States,* 340 F.2d 510 (2d Cir.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965).

■ On the other hand, an individual, as a sole proprietor, may withhold his business records from a grand jury investigation if he asserts his Fifth Amendment privilege. *Bellis, supra,* 417 U.S. at 87–88, 94 S.Ct. at 2182; *Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States,* 657 F.2d 5, 8 n. 1 (2d Cir.1981); *United States v. Beattie,* 541 F.2d 329, 331 (2d Cir.1976). Indeed, the privilege may be invoked by a sole proprietor of a business without regard to the size or complexity of the business. *In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 330 (3d Cir.1982); *In re Grand Jury*

*Subpoena,* 646 F.2d 963, 968–69 (5th Cir. 1981).

Whether a partnership should be treated like a corporation or like a shared sole proprietorship for Fifth Amendment purposes was an unsettled question until the Court decided *Bellis v. United States, supra.* In *Bellis* an individual partner of a three member law firm attempted to protect partnership records in his possession from the purview of a grand jury by asserting his privilege against self-incrimination. *Bellis v. United States, supra,* 417 U.S. at 86, 94 S.Ct. at 2182. He argued that the small firm did not constitute an entity separate from the individual partners. The Court held that where a partnership has "an established institutional identity independent of its individual partners," *id.* at 95, 94 S.Ct. at 2186, an individual partner may not withhold subpoenaed documents of the partnership that he holds in his representative capacity. *Id.* at 95–97, 94 S.Ct. at 2186–87. To determine if the partnership had a separate identity, distinct from its individual members, the Court looked to a number of factors. These included the fact that the firm was not an informal or temporary arrangement, had "a bank account in the partnership name, had stationary using the firm name on its letterhead, and in general, held itself out to third parties as an entity with an independent institutional identity." *Id.* at 96–97, 94 S.Ct. at 2187. The Court also noted that the partnership employed two other attorneys, who were not members of the partnership, that it filed separate partnership returns for federal tax purposes, and that "[s]tate law permitted the firm to be sued ... and hold title to property ... in the partnership name, and generally regarded the partnership as a distinct entity for numerous purposes." *Id.* at 97, 94 S.Ct. at 2187 (citations omitted).

▪ Applying the above criteria, SFI clearly has an established institutional identity separate from its individual partners. SFI is a limited partnership formed under New York state law; it is registered as a broker-dealer doing business in New York.

Affidavit in Opposition to Motion to Quash of Kevin McLaughlin, sworn to August 18, 1982 ("McLaughlin Aff.") ¶ 2. In 1980, the firm employed approximately twenty individuals, some of whom were traders, and served about two hundred customers. *Id.* at ¶¶ 4, 6, 9. It has its own stationery with the firm letterhead. *Id.* at ¶ 8. The firm maintained two bank accounts, filed partnership income tax returns for 1979 and 1980, *id.,* ¶¶ 7, 12, and had substantial assets. Reply Affidavit of Faith Colish, sworn to August 23, 1982 ¶ 3. In addition, SFI has purchased material under its business name and has received fees from another firm for the use of its space and staff. McLaughlin Aff. at ¶¶ 8, 10. Moreover, Senft and SFI were to be two separate general partners in a new limited partnership that Senft was organizing. *Id.*

Movants argue that these facts are irrelevant in determining whether the Fifth Amendment privilege is available to Senft and merely divert the Court's attention from precedent squarely supporting their motion. They contend that unless this Court is prepared to overturn *United States v. Slutsky,* 352 F.Supp. 1105 (S.D.N.Y.1972), the subpoenas must be quashed. Reply Memorandum of Law in Support of the Motion by Sentinel Financial Instruments and Michael M. Senft to Quash Subpoenas ("Reply Memorandum") at 1.

In *Slutsky,* the government sought to compel the production of business records of a two-man family partnership. The partners, Ben and Jule Slutsky, were brothers who operated a resort known as the Nevele Country Club. *United States v. Slutsky, supra,* 352 F.Supp. at 1107. The club consisted of a multi-million dollar hotel operation, with a number of employees, that was managed by the Slutskys and their two sons, all of whom lived on the premises. *Id.*

The court in *Slutsky* stated that, in determining whether a partnership more closely resembles a sole proprietorship or a corporation, the "focus [should be] placed on the extent and nature of the ownership group." *Id.* at 1108. On the facts of that case, the court held that a two-man "family partner-

ship is not so impersonal in the scope of its membership and activities that it can not represent the purely private or personal interests of its constituents." *Id.* Accordingly, the court found that the defendants' Fifth Amendment privilege against self-incrimination was available and denied the government's motion. *Id.* at 1109.

The movants, citing the Supreme Court's dictum in *United States v. Bellis, supra,* that there "might be a different case if [the partnership] involved a small family partnership," *supra,* 417 U.S. at 101, 94 S.Ct. at 2189 (citing *United States v. Slutsky, supra*), argue that *Slutsky* is still good law and that, if this Court focuses on the nature of the ownership group and control of the partnership, it will find that SFI epitomizes the type of small family partnership that the Court was referring to in *Bellis.* Reply Memorandum at 1, 4.

However, the cases since *Bellis* have invariably relied on a factual examination of organizational activity, rather than focusing on the extent and nature of the ownership group, to determine if the records of a small family partnership may be protected by the Fifth Amendment privilege. *E.g., United States v. Mahady & Mahady,* 512 F.2d 521, 523–24 (3d Cir.1975) (four-brother law firm partnership); *In re September 1975 Special Grand Jury,* 435 F.Supp. 538, 543–46 (N.D.Ind.1977) (husband and wife partnership treated as separate entity with letterhead and separate tax return); *United States v. Hankins,* 424 F.Supp. 606, 615 (N.D.Miss.1976), *aff'd in part and rev'd in part,* 565 F.2d 1344, 1349 (5th Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979) (two-brother partnership with structured business, numerous employees and substantial assets).

Hence, a factual examination of an organization's activities is not a mere diversion from judicial precedent, as the movants argue. The facts relating to SFI's activities are similar to those examined in the above cases and in *Bellis v. United States,*

*supra,* 417 U.S. at 95–100, 94 S.Ct. at 2186–2189. They are certainly relevant to the instant case.

Moreover, *United States v. Slutsky, supra,* is factually distinguishable from this case, and *Slutsky's* continued vitality, in view of the test established in *Bellis,* is an issue this Court need not resolve. In *Slutsky* the court stressed that the partners gave their personal attention to the day-to-day business operations, lived on the premises, were familiar with the bookkeeping and accounting practices of the organization, and were the only ones, along with their sons, who could sign checks. *United States v. Slutsky, supra,* 352 F.Supp. at 1108. SFI, on the other hand, authorized employees to draw checks and had a corporate-like structure with an executive vice president, chief financial and operations officer, and a controller. McLaughlin Aff. at ¶¶ 6, 7. This type of organization makes it highly unlikely that Senft was familiar with the day-to-day operations or the bookkeeping and accounting practices of SFI.

More significant is that SFI is a limited partnership formed under the statutory criteria of New York law, N.Y. Partnership Law § 91, while the partnership in *Slutsky* was a general partnership. The courts have found limited partnerships, being creatures of the legislature, to be more like corporations than general partnerships.[1] *United States v. Silverstein,* 314 F.2d 789 (2d Cir.), *cert. denied,* 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963); *Lynn v. Cohen,* 359 F.Supp. 565 (S.D.N.Y.1973).

Nevertheless, movants, relying on a statement in *Bellis* that "the applicability of the [Fifth Amendment] privilege should not turn on an insubstantial difference in the form of the business enterprise," Reply Memorandum at 3 (quoting *Bellis v. United States, supra,* 417 U.S. at 101, 94 S.Ct. at 2189), argue that this Court would be unjustly putting form over substance in classifying SFI as a partnership instead of a sole proprietorship. Movants acknowledge that

---

1. For example, derivative actions on behalf of an organization may be brought by limited partners, N.Y. Partnership Law § 115–a (McKinney Supp.1981), and by corporate stockholders, N.Y.Bus.Corp.Law § 626 (McKinney 1963).

SFI is technically a limited partnership but contend that it should be considered a sole proprietorship since Senft owns 98% of the business and, as the only general partner, has complete control over the management and policy making of SFI. Memorandum of Law in Support of the Motion by Sentinel Financial Instruments and Michael M. Senft to Quash Subpoenas ("Movants' Memorandum") at 4.

This argument is not persuasive. First, SFI is not a sole proprietorship; it has executed and filed a formal partnership agreement pursuant to New York law. McLaughlin Aff. ¶ 2. Second, the *Bellis* Court, in noting that an insubstantial difference in the form of a business organization should not determine the availability of the Fifth Amendment privilege, was addressing the question whether the partnership form, which is a shared proprietorship, should preclude the Court from treating the partnership like a corporation for Fifth Amendment purposes. The Court held that it did not. *Bellis v. United States, supra,* 417 U.S. at 101, 94 S.Ct. at 2189. Third, the Court did not reject the importance of the form of a business enterprise in assessing the availability of the privilege and noted that even one-man corporations—which often closely resemble sole proprietorships— may not avail themselves of the privilege. *Bellis v. United States, supra,* 417 U.S. at 100, 94 S.Ct. at 2189 (citing *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913); *Fineberg v. United States,* 393 F.2d 417 (9th Cir.1968); *Hair Industry, Ltd. v. United States,* 340 F.2d 510 (2d Cir.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965)). Indeed, the Court stated that "the existence of a formal partnership agreement would merely reinforce our conclusion that the partnership is properly regarded as an independent entity with a relatively formal organization." *Bellis v. United States, supra,* 417 U.S. at 96 n. 4, 94 S.Ct. at 2187 n. 4.

The *Bellis* Court noted that the policy considerations underlying the Fifth Amendment privilege, which make the privilege unavailable for records of a collective entity, reflect not only the "view that the privilege against self-incrimination should be 'limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records,'" *Bellis v. United States, supra,* 417 U.S. at 89–90, 94 S.Ct. at 2183 (citing *United States v. White, supra,* 322 U.S. at 701, 64 S.Ct. at 1252), but also an interrelated policy, "the protection of an individual's right to a 'private enclave where he may lead a private life,'" *id.* at 91, 94 S.Ct. at 2184 (citing *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964)). This second policy consideration indicates that the form a business organization takes can often be decisive in determining whether the Fifth Amendment privilege is available to the individual members. An organized entity often loses its claim to privacy and confidentiality since access to its records is controlled by statute or by the organization's own by-laws. *Bellis v. United States, supra,* 417 U.S. at 92, 94 S.Ct. at 2185.

Once Senft created SFI as a limited partnership, with himself as general partner and the Jenifer E. Senft Trust, and later David Senft, as limited partners, he necessarily lost all claims to privacy and confidentiality that may have attached to a sole proprietorship, or possibly, to a small family general partnership.[2] The limited partnership was not "an association of two or more persons to carry on as co-owners a business for profit." N.Y. Partnership Law § 10(1). The limited partners have no authority over how SFI is operated; Michael Senft has sole managerial authority. Movants' Memorandum at 4; see also N.Y. Partnership Law § 99. The interests of Senft and those of the Jenifer E. Senft Trust and David

---

2. In reality, Burton G. Lipsky, as trustee for the Jenifer E. Senft Trust, is the limited partner. It is questionable whether a partnership that includes an unrelated trustee is a family partnership since neither the trust nor the trustee is a family member.

Senft are not identical.[3] Moreover, Senft, as statutory custodian of SFI's records, N.Y. Partnership Law § 99, "lacks the control over their content and location and the right to keep them from the view of others which would be characteristic of a claim of privacy and confidentiality." *Bellis v. United States, supra,* 417 U.S. at 92, 94 S.Ct. at 2185.

Clearly SFI is not a sole proprietorship nor is it a small family partnership that should be treated like a sole proprietorship for Fifth Amendment purposes. SFI has an established institutional identity, and Senft is not entitled to assert his privilege against self-incrimination to keep the subpoenaed records from the grand jury.

Since the records of SFI are not privileged while in the possession of Senft, they are not privileged in the hands of Wachtell, Lipton,[4] and the movants may not rely on the attorney-client privilege to prevent production of the SFI records. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39; *Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States, supra,* 657 F.2d at 8 n. 1.

For the reasons stated above the motion is denied.

So ordered.

---

**3.** Most explicitly, the trustee's prime obligation is to see that the trust receives its share of SFI's profits. *See Pyle v. Pyle,* 137 App.Div. 568, 122 N.Y.S. 256 (1st Dep't), *aff'd,* 199 N.Y. 538, 92 N.E. 1099 (1910). If the trustee doubts that the trust is receiving its fair share, he has a statutory right to "... a formal account of partnership affairs whenever circumstances render it just and reasonable." N.Y. Partnership Law § 99(1)(b).

**4.** The Court, therefore, need not determine if the privilege applies when an attorney receives a client's documents from a third person.