**In re TOWER METAL ALLOY COMPANY, Debtor.**

**Ruth A. SLONE–STIVER, Plaintiff,**

v.

**Sharon BROOCK, et al., Defendants.**

**Bankruptcy No. 91–02828.**
**Adversary No. 94–0279.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

May 23, 1996.

Order Granting Reconsideration in Part
Aug. 2, 1996.

**600**

John Paul Rieser (Rieser & Marx, of counsel), Dayton, Ohio, for Plaintiff/Trustee.

Richard Boydston, Benesch, Friedlander, Coplan & Aronoff, Cincinnati, Ohio, for defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

WILLIAM A. CLARK, Chief Judge.

This matter is before the court upon the Plaintiff–Trustee's Motion to Compel (Doc. 22–1), Defendants' Memorandum in Opposition (Doc. 28–1), and the hearing held May 6, 1996.

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) & 1334 and the standing order of reference entered in this district. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (H).

### FINDINGS OF FACT

1. Plaintiff Ruth A. Slone–Stiver ("Plaintiff–Trustee") is a duly appointed, qualified, and acting Chapter 7 trustee of the bankruptcy estate in Case No. 91–02828 in this court.

2. Leslie R. Broock is a principal shareholder, director, and officer of Tower Metal Alloy Company, the corporate debtor in Case No. 91–02828. Leslie Broock is presently the target of a grand jury investigation.

3. Defendant Sharon A. Broock is and has at all times relevant to this adversary proceeding the wife of Leslie R. Broock. Defendants' Proposed Findings of Fact, ¶ 2. Sharon Broock is presently a subject of a grand jury investigation.

4. Defendant Ben Broock is the father of Leslie R. Broock. Testimony of Ben Broock; Defendants' Proposed Findings of Fact, ¶ 11.

5. Defendant Mindi L. Broock is the daughter of Leslie R. Broock. Testimony of Ben Broock; Defendants' Proposed Findings of Fact, ¶ 12.

6. Defendant BMS, a.k.a. B.M.S. ("BMS"), is an entity whose nature is in dispute.

7. BMS stands for Ben, Mindi, and Sharon. Testimony of Ben Broock.

8. The only records regarding the name "BMS" or "B.M.S." in the office of the Ohio Secretary of State concern a corporation which has no apparent connection to Defendant BMS in this case. Defendants' Exhibits 9 and 10; Defendants' Proposed Findings of Fact, ¶ 22.

9. A checking account, number 0518524 in the name of BMS, was established at Provident Bank in September 1992. Signatories on the BMS checking account were Ben Broock and Mindi Broock. Plaintiff's Exhibit 4. The account existed until at least July of 1993. Plaintiff's Exhibit 25.

10. Separate accounting sheets were kept in the BMS name. Plaintiff's Exhibit 13.

11. A Sole Proprietorship Certificate dated September 4, 1992 for BMS was filed with Provident Bank. The Certificate lists Ben Broock and Mindi Broock as authorized signatories for the BMS checking account. The Certificate, signed by Ben Broock, states at the outset the following: "I, the undersigned, do hereby certify that I am doing business under the name and style of /BMS/ that no one else has any right, title or interest therein, and that said business is unincorporated." Plaintiff's Exhibit 5.

12. The billing address for the BMS checking account is the home address of Leslie R. Broock and Sharon Broock. Plaintiff's Exhibit 4; Defendants' Proposed Findings of Fact, ¶¶ 10 and 15. This address was also used in conducting BMS transactions. Plaintiff's Exhibits 6, 8, 26, and 27; Defendants' Proposed Findings of Fact, ¶ 18.

13. Scrap metal and other items were purchased and sold under the BMS name. Plaintiff's Exhibits 2, 3, 6, 7, 8, 9, 13, 26, and 27; Defendants' Proposed Findings of Fact, ¶ 17. Business was conducted by Ben Broock under the BMS name. Plaintiff's Exhibits 2, 3, 6, 7, 8, 9, and 13.

14. Checks drawn on the BMS checking account were written in Sharon Broock's handwriting. Testimony of Mindi Broock; Plaintiff's Exhibit 7. These checks were signed by Ben Broock. Plaintiff's Exhibit 7.

15. A check, dated January 27, 1993 and signed by Ben Broock, was drawn on the BMS checking account in the amount of $19,000. The payee on the check was Leslie Broock. The memo line of the check reads: "For Repayment of Loan." Plaintiff's Exhibit 11.

16. Defendant Springmore, Ltd. ("Springmore") is a general partnership with partners Leslie Broock and Sharon Broock. Defendants' Proposed Findings of Fact, ¶ 23.

17. Springmore conducted the business of horse training and showing. Plaintiff's Exhibits 23 and 24; Defendants' Proposed Findings of Fact, ¶ 25.

18. A statement from Equine Medical Associates, Inc. dated August 31, 1992, is addressed to "Mindy Broock" and Springmore, LTD. Plaintiff's Exhibit 19.

19. A credit card, in the name of Springmore, Ltd., was used on different occasions to purchase food and gasoline. On one occasion the charge slip was signed by Mindi L. Broock. Plaintiff's Exhibit 20.

20. Federal partnership tax returns in the name of Springmore, Ltd. were compiled in 1990 and 1991. Plaintiff's Exhibits 23 and 24.

21. Defendant Broockwood Stables ("Broockwood") is an entity whose nature is in dispute.

22. On April 12, 1992, there existed no records with the state of Ohio of the existence of Broockwood, "Brookwood Stables, Inc." or "Broockwood Stables, Inc." as separately registered business entities. Defendants' Exhibits 6, 7, and 8.

23. A checking account, number 00109191–3 in the name of "Broockwood, Leslie or Sharon A. Broock," was maintained at Security National Bank. Plaintiff's Exhibit 28; Defendants' Exhibits 3, 4, and 5.

24. Leslie Broock maintained a separate, personal checking account, number 03448315053, at the Huntington National Bank. Plaintiff's Exhibits 16, 17, 29, 30, and 31. A revised signature card dated December 18, 1984, authorized either Leslie Broock or Sharon Broock as signatories for the Huntington checking account.

25. The Broockwood account was used to pay ordinary household expenses such as utility, grocery, and department store bills. Defendants' Exhibit 5; Defendants' Proposed Findings of Fact, ¶ 31.

26. On June 13, 1991, a petition under Chapter 11 of Title 11 of the United States Code was filed by the debtor, Tower Metal Alloy Company. The proceeding, Case No. 91–02828, was converted Chapter 7 on September 21, 1993.

27. On December 30, 1994, this adversary proceeding was instituted by the Plaintiff–Trustee in order to, among other things recover pre- and post-petition transfers, fraudulent conveyances.

28. On February 13, 1995, Plaintiff–Trustee served Plaintiff–Trustee's First Combined Set of Interrogatories, Document Production Requests, and Requests for Admission to the defendants. Included in that request was an offer by Plaintiff–Trustee of thirty additional days to respond if so requested by Defendants in writing before the response deadline.

29. On March 15, 1995, the deadline for responses to said request, Defendants responded by accepting in writing Plaintiff–

Trustee's offer for an additional thirty days to respond.

30. On March 30, 1995, Defendants filed a Motion for Stay, claiming the Fifth Amendment privilege against self-incrimination.

31. On September 8, 1995, this court denied the Motion for Stay "for the fundamental reason that artificial entities have no Fifth Amendment privilege."

32. On September 29, 1995, Leslie Broock, on behalf of BMS, Broockwood, and Springmore, responded to the Trustee's request by claiming a Fifth Amendment privilege against self-incrimination.

33. Plaintiff–Trustee made additional requests for information on January 17, 1996 and January 30, 1996.

34. To date, BMS, Broockwood, and Springmore have not responded to any of Plaintiff–Trustee's request other than by claiming Fifth Amendment privilege.

35. On February 8, 1996, Plaintiff–Trustee moved the court for an order compelling BMS, Broockwood, and Springmore to provide answers to Plaintiff–Trustee's discovery requests. It is this motion, and the subsequent memoranda and filings by the parties regarding this motion, that is before the court today.

## CONCLUSIONS OF LAW

Leslie Broock, in response to discovery requests by Plaintiff–Trustee, has invoked the Fifth Amendment privilege against self-incrimination on behalf of defendants BMS, Springmore, and Broockwood. For the reasons more fully stated below, this court finds that defendant BMS, as either the sole proprietorship of Ben Broock or a collective entity, and Springmore, as a collective entity, are not entitled to Fifth Amendment privilege. In addition, although defendant Broockwood is determined by this court not to be a collective entity, the court finds that responses to Plaintiff–Trustee's discovery requests for documents relating to Broockwood would be testimonial, and thus the defendants may properly invoke the Fifth Amendment privilege against self-incrimination as to those requests.

## I.

The constitutional privilege commonly known as the privilege against self-incrimination arises out of the Fifth Amendment, which states that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. Amend V; *see also Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886).

When presented with an invocation of this Fifth Amendment privilege, it is the trial court's task to determine if the claim is valid. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

While the Fifth Amendment privilege against self-incrimination applies to civil proceedings when the responses might carry with them criminal consequences, having a valid Fifth Amendment claim does not automatically entitle the claimant not to answer. *Compare United States v. Kordel*, 397 U.S. 1, 7–8, 90 S.Ct. 763, 766–68, 25 L.Ed.2d 1 (1970) *with Hoffman v. United States*, 341 U.S. 479, 481, 71 S.Ct. 814, 815–16, 95 L.Ed. 1118 (1951).

In civil discovery, courts must weigh the claimant's need for the privilege against the information-seeking party's need for the information.

In evaluating the claim in the case *sub judice*, the court is faced with two apparently contradictory Supreme Court doctrines: the Court's early "collective entity" doctrine and the recent emphasis on testimonial aspects of production. *Compare Bellis v. United States*, 417 U.S. 85, 88–89, 94 S.Ct. 2179, 2182–83, 40 L.Ed.2d 678 (1974) *with United States v. Doe*, 465 U.S. 605, 610–11, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). Both parties cite selectively from both lines of precedent, while largely ignoring the Supreme Court's synthesis of the two in a later ruling, *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988).

Before examining the Supreme Court's synthesis of the two doctrines in *Braswell*, and how it applies to the defendants in this

proceeding, the court will consider each individual approach in turn.

## THE "COLLECTIVE ENTITY" DOCTRINE

 Historically, the privilege against self-incrimination has been limited to individuals, and only extended to objects such as private papers and effects to the extent that the production of those papers impinged upon the owner's personal privilege. *United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944); *Boyd,* 116 U.S. at 630, 633–35, 6 S.Ct. at 532, 533–35.

In addition, the Supreme Court has determined that when business ventures such as corporations take on a legal status independent of the individuals in question, the individuals may no longer claim a Fifth Amendment privilege in the documents of that entity. *Wilson v. United States,* 221 U.S. 361, 377, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911).

 The above-stated exception, as put forth by *Wilson* and its progeny, has come to be known as the "collective entity" doctrine. *See, e.g., Bellis v. United States,* 417 U.S. 85, 88–89, 94 S.Ct. 2179, 2183–84, 40 L.Ed.2d 678 (1974). Succinctly stated, the rule is that "an individual cannot rely upon the privilege [against self-incrimination] to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Id.* at 88, 94 S.Ct. at 2183. This exception has been extended to both corporations and partnerships. *White,* 322 U.S. at 699–700, 64 S.Ct. at 1251–52; *Bellis,* 417 U.S. at 93, 94 S.Ct. at 2185–86.

The *Bellis* Court made it clear, however, that not all partnerships may rise to the level of collective entities. The Court stated that "[w]e think it is similarly clear that partnerships may and frequently do represent organized institutional activity so as to preclude any claim of Fifth Amendment privilege...." *Bellis,* 417 U.S. at 93, 94 S.Ct. at 2186.

In *Bellis,* the Court examined in detail many aspects of organized institutional activity which might give rise to a collective entity. *Bellis,* 417 U.S. at 95–97, 94 S.Ct. at 2186–87. In finding a small, three-partner law firm to be a collective entity, the *Bellis* Court concentrated on factors including the formality of the relationship, the length of time the entity existed, the purpose for which the partnership was formed, the treatment of the partnership under state law, the presence of an independent partnership bank account, the existence of documents utilizing a partnership letterhead, the number of employees of the partnership, and the treatment of the entity for federal tax purposes. *Id.* Even in the absence of a formal constitution or by-laws, the Supreme Court found enough of the criteria had been met to establish the partnership as a collective entity. *Id.* at 96–97, 94 S.Ct. at 2187.

The Court in *Bellis* also addressed in *dicta* an unusual holding in the lower courts that "small family partnerships" might not be considered as collective entities. *Bellis,* 417 U.S. at 101, 94 S.Ct. at 2189–90 (citing *United States v. Slutsky,* 352 F.Supp. 1105, 1108 (S.D.N.Y.1972); *In re Subpoena Duces Tecum,* 81 F.Supp. 418, 421 (N.D.Cal.1948)).

This court finds it unlikely that the Supreme Court intended in any way to detract from its previous, detailed analysis of organized institutional activity to create a new test based upon familial relationships. Instead, the Court simply recognized that often family-run businesses do not meet the criteria of organized institutional activity as set forth in *Bellis.* This is consistent with the treatment of this issue in the majority of lower courts after *Bellis. See, e.g., United States v. Allshouse,* 622 F.2d 53, 55 (3d Cir. 1980) ("[S]mall, family-run partnerships fall within the rule of *Bellis.*"); *United States v. Mahady & Mahady,* 512 F.2d 521, 523–24 (3d Cir.1975) (four-brother law firm partnership not entitled to privilege); *In re Sentinel Fin. Instruments,* 553 F.Supp. 71, 74 (S.D.N.Y.) (finding no general small family partnership exception), *aff'd sub. nom., In re Grand Jury Subpoenas Addressed to Sentinel Fin. Instruments,* 714 F.2d 113 (2d Cir. 1982), *cert. denied sub nom., Sentinel Fin. Instruments v. United States,* 459 U.S. 1208, 103 S.Ct. 1200, 75 L.Ed.2d 442 (1983); *Sreter v. Hynes,* 419 F.Supp. 546, 548–49 (E.D.N.Y. 1976) (nursing home, by its very nature, de-

fies protection as a "family business" despite being owned and run by a mother and son as partners); *In re September 1975 Special Grand Jury,* 435 F.Supp. 538, 543–46 (N.D.Ind.1977) (husband and wife partnership treated as separate entity with letterhead and separate tax return); *United States v. Hankins,* 424 F.Supp. 606, 615 (N.D.Miss. 1976), *aff'd in part and rev'd in part,* 565 F.2d 1344, 1349 (5th Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979) (two-brother partnership with structured business, numerous employees and substantial assets not entitled to privilege). *But see In re Grand Jury Subpoena Duces Tecum (Doe),* 605 F.Supp. 174 (E.D.N.Y. 1985).

Until recently, the application of the "collective entity" doctrine has dictated that the records of sole proprietorships be awarded the same protection of private papers awarded in *Boyd,* as the sole proprietorship has no independent existence from the individual proprietor. *See, e.g., Bellis,* 417 U.S. at 87–88, 94 S.Ct. at 2182–83.

This protection of the papers of sole proprietorships came to end, however, when the Supreme Court shifted its focus from the papers themselves to the act of production. *See United States v. Doe,* 465 U.S. 605, 610–11, 104 S.Ct. 1237, 1240–42, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976).

## THE TESTIMONIAL ASPECT OF PRODUCTION

Prior to the Supreme Court's holdings in Fisher and Doe, the law was clear that it was the act of creating a document that was protected under the Fifth Amendment, not the production of that document once it was created. *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913) ("A party is privileged from producing the evidence, but not from its production."). Beginning with *Fisher,* however, the Supreme Court began to concentrate less on the creation and content of documents, and more on the act of producing it in court.

In *Fisher v. United States,* the Supreme Court stated:

We cannot cut the Fifth Amendment completely loose from the moorings of its language, and make it serve as a general protector of privacy a word not mentioned in its text and a concept directly addressed in the Fourth Amendment. We adhere to the view that the Fifth Amendment protects against "compelled self-incrimination, not (the disclosure of) private information."

425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976) (quoting *United States v. Nobles,* 422 U.S. 225, 233 n. 7, 95 S.Ct. 2160, 2167 n. 7, 45 L.Ed.2d 141 (1975)) (alteration in original).

The Court in *United States v. Doe* clarified this new approach, by stating:

[T]he Fifth Amendment protects the person asserting the privilege only from compelled self-incrimination. Where the preparation of business records is voluntary, no compulsion is present. A subpoena that demands production of documents "does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought."

*See United States v. Doe,* 465 U.S. 605, 610–11, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984) (quoting *Fisher,* 425 U.S. at 409, 96 S.Ct. at 1580) (citations and footnote omitted).

█ Both *Fisher* and *Doe* made clear, however, that while the Fifth Amendment does not protect the contents of voluntarily prepared documents, it does protect the act of production of those documents where that act has more than minimal testimonial value. *Doe,* 465 U.S. at 613–14, 104 S.Ct. at 1242–43; *Fisher,* 425 U.S. at 410–12, 96 S.Ct. at 1580–82; *see also Butcher v. Bailey,* 753 F.2d 465, 469 (6th Cir.), *cert. dismissed, Bailey v. Butcher,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

The courts have had a difficult time determining just when the production of documents constitutes testimony. The Fisher Court stated that the production of a document is nontestimonial if the document's existence and location are a "foregone conclusion." *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581. In the absence of such a clear condi-

tion, however, testimony is not so easy to identify.

The Sixth Circuit in considering this issue, has concluded that "[p]roduction of documents may be testimonial in any of three ways: by acknowledging that the documents exist; by acknowledging that they are in the control of the person producing them; or by acknowledging that the person producing them believes they are the documents requested and thereby authenticating them for purposes of Fed.R.Evid. 901." *Butcher v. Bailey,* 753 F.2d 465, 469 (6th Cir.), *cert. dismissed, Bailey v. Butcher,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

## SYNTHESIZING THE TWO DOCTRINES

Though both *Fisher* and *Doe* acknowledged the Court's previous collective entity reasoning, neither made clear what effect the new emphasis on the testimonial aspects of document production would have on this line of cases. *Doe,* 465 U.S. at 608–09, 104 S.Ct. at 1239–40; *Fisher,* 425 U.S. at 408–09, 411–12, 96 S.Ct. at 1579–80, 1581–82.

The Sixth Circuit addressed this issue in 1985. *In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143 (6th Cir), *cert. denied, Morganstern v. United States,* 474 U.S. 1033, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985). In *Morganstern,* the court determined that "[d]espite this shift in emphasis from the contents of subpoenaed documents to the testimonial act of production, the Court did not retreat from the collective entity rule." *Morganstern,* 771 F.2d at 145. The court went on to determine that the testimonial analysis of *Fisher* and *Doe* does not apply if the entity is a collective entity, as "the collective entity rule prevents the custodian of corporate and partnership records from relying on the act of production as a testimonial incriminating act." *Id.* at 147.

In 1988, the Supreme Court revisited the "collective entity" doctrine, this time in the light of its holdings in *Fisher* and *Doe. Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). In *Braswell,* the Court reached the same conclusion as reached by the Sixth Circuit in *Morganstern,* reaffirming the "collective entity" doc-

trine. *Id.* at 104–119, 108 S.Ct. at 2288–2296. The Court stated:

> Had petitioner conducted his business as a sole proprietorship, *Doe* would require that he be provided the opportunity to show that his act of production would entail testimonial self-incrimination. But petitioner has operated his business through the corporate form, and we have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals.

*Id.* at 104, 108 S.Ct. at 2288.

In addition, the *Braswell* Court declined to create an exception for close corporations where the only agent of the corporation capable of complying with the subpoena is entitled to personally invoke the Fifth Amendment privilege. *Id.* at 116–117, 108 S.Ct. at 2294–2295. The Court found that where a surrogate would essentially be sent on an "unguided search" for lack of knowledge of the entity's records, the agent invoking the personal privilege is not entitled "to resist the subpoena on the ground that his act of production will be personally incriminating." *Id.* at 117, 108 S.Ct. at 2295. Instead, the court found that where an individual must comply on behalf of the entity, the individual's act of compliance may not be used against him in a criminal proceeding. *Id.* at 118, 108 S.Ct. at 2295. As the same act constitutes the corporation's production, "[t]he government has the right, however, to use the corporation's act of production against the custodian." *Id.*

■ Thus by analyzing the history of the Supreme Court's Fifth Amendment jurisprudence in this area, this court's task becomes clear. As in *Braswell* and *Morganstern,* this court must first attempt to determine whether the collective entity exception to the privilege applies. *Braswell,* 487 U.S. at 104, 108 S.Ct. at 2288; *Morganstern,* 771 F.2d at 147. If there is a collective entity, no further inquiry is necessary, the Fifth Amendment privilege against self-incrimination does not apply to collective entities. *Braswell,* 487 U.S. at 104, 108

S.Ct. at 2288; *Morganstern*, 771 F.2d at 145.

If, however, the business records being sought are those of an individual or sole proprietorship, the court must then determine to what extent the production of those records amounts to testimony. To the extent that this production is testimonial, it is afforded the same Fifth Amendment privilege as is the individual. *Doe*, 465 U.S. at 613–14, 104 S.Ct. at 1242–43; *Fisher*, 425 U.S. at 410–12, 96 S.Ct. at 1580–82; *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.), *cert. dismissed, Bailey v. Butcher*, 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

What remains unclear after *Braswell*, is whether the *Fisher* and *Doe* reasoning is meant to destroy the distinction between business and personal papers. In *Fisher*, both Justices Brennan and Marshall in separate opinions noted that though the Court had not addressed the issue of private papers, it is ripe for review. *Fisher*, 425 U.S. at 415 & n. 1, 96 S.Ct. at 1583 & n. 1 (Brennan, J., concurring); *Fisher*, 425 U.S. at 432, 96 S.Ct. at 1591 (Marshall, J., concurring). The Court has consistently declined to grant certiorari on this issue. *See, e.g., Packwood v. Senate Select Committee on Ethics*, 510 U.S. 1319, 1321–22, 114 S.Ct. 1036, 1038, 127 L.Ed.2d 530 (1994); *Doe v. United States*, 510 U.S. 1091, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994).

█ Fortunately for the court, this issue has already been clarified in the context of bankruptcy by the Sixth Circuit. *Butcher v. Bailey*, 753 F.2d 465, 468–69 (6th Cir.), *cert. dismissed, Bailey v. Butcher*, 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). In *Butcher*, the court concluded that in the context of bankruptcy, the content of private papers should be treated specially only "where compelled disclosure would break 'the heart of our sense of privacy.'" *Id.* at 469 (quoting Justice Marshall's concurrence in *Doe*). The court went on to state that:

> The records at issue in the instant case are personal records, but only those personal records which relate to property of the bankrupt's estate. Information relating to property of the estate is not so intimately personal as to evoke serious

concern over privacy interests, particularly in bankruptcy where the trustee has a strong interest in knowing the nature and scope of the estate's holdings.

*Id.* Thus private papers in general will not be accorded Fifth Amendment privilege, unless the production of those papers would be considered testimonial. *Id.*

## II.

Having examined the relevant case law, it is necessary for the court to now determine in what manner this precedent affects the defendants in the proceeding *sub judice*. There are three entities who have attempted to claim the Fifth Amendment privilege against self-incrimination: BMS, Springmore, and Broockwood. As each poses individual difficulties, the court will address each in turn.

### BMS

█ Defendants allege that BMS is in fact only a name under which Leslie Broock bought and sold scrap metal. Although some of the court testimony supports this allegation, the weight of the evidence supports either the conclusion that BMS was either a partnership of Ben, Mindi, Sharon, and Leslie Broock, or the sole proprietorship of Ben Broock.

The court has seen evidence of the business conducted by BMS in the scrap metal industry beginning in September 1992. Although, due at least in part to the defendants' blanket claim of Fifth Amendment privilege, the court has no evidence of BMS's transactions beyond May 1993, for the period of time between September 1992 and May 1993 it is clear that BMS was more than an informal association for the undertaking of a few projects, as discussed in *Bellis. See, e.g., Bellis*, 417 U.S. at 95, 94 S.Ct. at 2186. For example, in October of 1992, Ben Broock made bids on equipment of Tower Metal Alloy Company under the BMS name. In addition, the evidence shows that BMS conducted transactions with other scrap metal businesses including Louisville Scrap, Marcus Iron & Steel, Marion Steel Co., and Steelmet, Inc.

As in *Bellis,* although BMS apparently had no "formal constitution or bylaws to govern its internal affairs, state partnership law impose[s] on [BMS] a certain organizational structure in the absence of any contrary agreement by the partners." *Id.* at 96, 94 S.Ct. at 2187; *see, e.g.,* Ohio Rev.Code Ann. § 1775.17 (Baldwin 1996). Although *Bellis* based its state law holdings on Pennsylvania partnership law, both Pennsylvania and Ohio have adopted the Uniform Partnership Act. Ohio Rev.Code Ann. ch. 1775; Pa.Stat.Ann. Tit. 15, pt. III, ch. 83 (Purdon 1996).

A separate checking account was kept in the BMS name, and separate record of BMS's purchase orders and deliveries were maintained. *See, e.g., Bellis,* 417 U.S. at 96, 94 S.Ct. at 2187.

Though no evidence was given of BMS filing partnership tax returns, this does not mean that it did not or was not required to do so. In addition, despite defendants' evidence that the Ohio Secretary of State has no pertinent record of BMS, this at best is inconclusive. In Ohio, partnerships are not required to register with the state to do business. Although in order to perform certain acts, partnerships operating under fictitious names are required to register in the county in which they conduct business, failure do so does not affect the nature of the partnership itself. Unregistered partnerships, for example, may still be sued under the fictitious name, and are generally treated as independent entities. *See, e.g.,* Ohio Rev. Code Ann. § 2307.24. For a state court opinion analyzing Ohio law and concluding that Ohio partnerships are collective entities under *Bellis,* see *State v. Gowitzka Fisheries,* 1981 WL 5768 (Ohio Ct.App.1981) (Ottawa County).

No record of employees is given, but the evidence shows that Ben, Sharon, and Mindi Broock all participated in BMS's affairs. Ben and Mindi Broock were the sole signatories on the BMS checking account. In fact, in opening the account, Ben signed a statement that BMS was his sole proprietorship.

Most if not all the records pertaining to BMS's business transactions in the court's possession reflect the activity of Ben Broock. In addition, while Ben Broock appears to have signed all of the checks, the in-court testimony indicated that the checks were made out in Sharon Broock's handwriting.

In fact, absent the defendants' persistent allegations that BMS is the sole proprietorship of Leslie Broock, very little evidence other than the defendants' testimony connects him to BMS. The fact that BMS used as its address Ben's home is inconclusive, as this apparently was also Sharon Broock's residence. Otherwise, the only other transaction in evidence of BMS involving Leslie Broock is a check, drawn on BMS's account, signed by Ben Broock, and made payable to Leslie. The memo line of the check reads: "For Repayment of Loan." If in fact, BMS is simply Leslie Broock's alter ego, as the Plaintiff–Trustee had originally contended, this notation makes little sense.

Instead the court is convinced that BMS is either the sole proprietorship of Ben Broock, as he indicated when he opened the BMS checking account, or a collective entity consisting of Ben, Mindi, Sharon, and Leslie. In either case, based on the facts before the court, BMS is not entitled to Fifth Amendment privilege. If BMS is a collective entity, it is not entitled in any form or fashion to Fifth Amendment privilege. If however, BMS is the sole proprietorship of Ben Broock, it is only entitled to Fifth Amendment protection if Ben is so entitled, and only then to the extent that production of its papers would constitute testimony. As no evidence is before the court that Ben Broock is either the target or the subject of a criminal investigation, the court finds that Ben Broock is not entitled invoke the Fifth Amendment.

It is therefore the court's conclusion that BMS, as either a collective entity or the sole proprietorship of Ben Broock, is not entitled to Fifth Amendment protection against self-incrimination and must comply with Plaintiff–Trustee's discovery requests.

## SPRINGMORE, LTD

■ Defendants do not contest that Springmore is a general partnership, with the sole partners being Leslie and Sharon Broock. Instead, defendants rely on *dicta* in

*Bellis* to claim that as the partners of Springmore consist only of a husband and wife, Springmore constitutes a "small family partnership" entitled to an exception from the "collective entity" doctrine. *See Bellis,* 417 U.S. at 101, 94 S.Ct. at 2189.

As previously discussed, while it is true the Supreme Court in *Bellis* failed to establish an absolute rule that partnerships constitute collective entities, neither did it create an exception based upon the familial relations of the partners. *Id.* at 93–101, 94 S.Ct. at 2185–2190.

In the case of Springmore, because of the defendants' Fifth Amendment invocation, the court only has evidence of the partnership's existence for the years of 1990 and 1991. Even so, there is sufficient evidence to conclude that Springmore conducted organized institutional activity so as to be considered a collective entity.

Springmore, despite having only family members as partners, was not used to conduct family affairs. Springmore was not "an informal association or a temporary arrangement for the undertaking of a few projects of short-lived duration." *Bellis,* 417 U.S. at 95, 94 S.Ct. at 2186–2187. Instead, by the defendants' own admission, Springmore was used to conduct the business of horse training and showing, and held itself out to third parties as such.

As in *Bellis,* and with BMS above, state law imposed an organizational structure on Springmore in the absence of express agreements on point. *Id.* at 96, 94 S.Ct. at 2187; *see, e.g.,* Ohio Rev.Code Ann. § 1775.17.

A checking account and credit card was maintained in the partnership's name. *See, e.g., Bellis,* 417 U.S. at 96, 94 S.Ct. at 2187. Although the partnership claims no employees, the evidence shows that Mindi Broock also conducted affairs for Springmore. Mindi used Springmore for veterinary services and had access to Springmore's credit card which she apparently used for personal expenses.

As in *Bellis,* separate partnership returns were filed for federal tax purposes. *Bellis,* 417 U.S. at 97, 94 S.Ct. at 2187. As with BMS above, Springmore may be sued under

the its fictitious name, and is generally treated as an independent entity. *See, e.g.,* Ohio Rev.Code Ann. § 2307.24.

Thus for all of the reasons stated above, the court finds that Springmore, Ltd. is a collective entity under the definition of *Bellis,* and as such no further inquiry into the testimonial aspects of production is necessary. Springmore is not entitled to Fifth Amendment privilege, nor are Leslie and Sharon Broock entitled to interfere with Springmore's compliance with discovery requests out of their own personal invocation of the privilege. *Braswell,* 487 U.S. at 117, 108 S.Ct. at 2294–95; *Morganstern,* 771 F.2d at 148.

## BROOCKWOOD

Unlike BMS and Springmore, Broockwood is clearly not a collective entity under the definition of *Bellis.*

Although a separate checking account was maintained in the Broockwood name, this is the only aspect of the *Bellis* analysis that has been met. The Broockwood account was apparently used interchangeably with the Broock's own names, and was used only to pay for normal, everyday household expenses. No evidence exists that there was any intention to create a partnership, nor was one in fact created.

Thus although created under the separate name Broockwood, the court finds that these papers are in fact the personal papers of Leslie and Sharon Broock. The court also finds that Leslie Broock, as the target of a grand jury investigation, and Sharon Broock, as the subject of a grand jury investigation, have a legitimate fear of self-incrimination in the production of their private papers.

Clearly, however, these papers are not so private so that their compelled "disclosure would break 'the heart of our sense of privacy.'" *Butcher,* 753 F.2d at 469 (quoting Justice Marshall's concurrence in *Doe* ).

The court must therefore consider the three criteria established in *Butcher:* whether production will acknowledge that the documents exist; acknowledge that the records are in the control of the person producing them; or acknowledge that the "person pro-

ducing them believes they are the documents requested and thereby authenticating them for purposes of Fed.R.Evid. 901." *Id.*

As in *Butcher,* the court finds that "it is a foregone conclusion, bordering on a tautology," that the Broock's have control of their own personal records." *Id.* But also, as in *Butcher,* the Broock's "production of these records would be sufficient to authenticate them as [their] personal records." *Id.*

Thus the court finds that the defendants may properly invoke the Fifth Amendment privilege against self-incrimination in their personal papers which have been created under the Broockwood name.

### III.

This court therefore finds that defendants BMS, as either the sole proprietorship of Ben Broock or a collective entity, and Springmore, as a collective entity, are not entitled to Fifth Amendment privilege. No further inquiry is necessary as to these entities. They must either respond to the discovery requests by the Plaintiff–Trustee through one of their identified agents, or appoint an agent who is sufficiently knowledgeable as to their records so as to be capable of so complying.

In addition, although defendant Broockwood is determined by this court not to be a collective entity, the court finds that responses to Plaintiff–Trustee's discovery requests for documents relating to Broockwood would be testimonial, and thus the defendants may properly invoke the Fifth Amendment privilege against self-incrimination as to those requests.

In accordance with the above holding, as it relates to defendants BMS and Springmore, Plaintiff–Trustee's Motion to Compel is hereby GRANTED, but as it relates to Broockwood, a.k.a. Leslie and Sharon Broock, Plaintiff's Motion to Compel is hereby DENIED.

The court hereby sets a hearing on the issue of the award of attorneys' fees requested by the Plaintiff–Trustee for Defendants' alleged lack of cooperation during the discovery process for *Tuesday, August 27, 1996, at 9:30 A.M.*

It is so ordered.

### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO RECONSIDER

Dated at Dayton, Ohio, this 29th day of July 1996. The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) & 1334 and the standing order of reference entered in this district. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (H).

This matter is before the court upon the Defendants' Motion for Reconsideration of 5/23/96 Decision and Order [Doc. 48–1], Plaintiff–Trustee's Memorandum Contra [Doc. 50–1], and Defendants' Reply Memorandum [Doc. 53–1] and Supplement to Defendants' Reply to Plaintiff–Trustee's Memorandum Contra Defendants' Motion for Reconsideration [Doc. 55–1].

The Defendants base their Motion for Reconsideration on two independent grounds: that the Plaintiff–Trustee's document requests are impermissibly over broad and that the court should not consider the issue of fees due to a prior agreement of the parties. The court will address each issue in turn.

### PLAINTIFF–TRUSTEE'S DOCUMENT REQUESTS

In an Order dated May 23, 1996, this court found that Defendants BMS and Springmore, Ltd. as collective entities were not entitled to invoke the Fifth Amendment privilege against self-incrimination. The court also found that Defendants Leslie and Sharon Broock, as agents of BMS and Springmore, are required to comply with requests for document discovery or to appoint agents who were capable of such compliance.

In that Order, the court made it clear that Leslie and Sharon Broock, in their capacity as agents for BMS and Springmore, are unentitled to extend their personal invocation of Fifth Amendment privilege to documents of these collective entities, and thus may be compelled to comply with the Plaintiff–Trustee's discovery requests pertaining to these documents. *See Braswell v. United States,* 487 U.S. 99, 117, 108 S.Ct. 2284, 2294–95, 101

L.Ed.2d 98 (1988); *In re Grand Jury Proceedings (Morganstern)*, 771 F.2d 143, 148 (6th Cir), *cert. denied, Morganstern v. United States*, 474 U.S. 1033, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985). The court also made it clear, that Ben Broock, in both his personal capacity and as an agent for BMS, is unentitled to invoke the Fifth Amendment privilege against self-incrimination.

Defendants now appear before the court requesting reconsideration of this Order. The Defendants claim that Plaintiff–Trustee's document requests go beyond mere requests for production, instead amounting to independent testimony. The court agrees.

While the law is clear that the custodian of documents for collective entities is unentitled to avoid requests for production, *Braswell*, 487 U.S. at 117, 108 S.Ct. at 2294–95; *Morganstern*, 771 F.2d at 148, the law is equally clear that this is a limited exception to an individual's right to Fifth Amendment invocation. *Curcio v. United States*, 354 U.S. 118, 128, 77 S.Ct. 1145, 1151–52, 1 L.Ed.2d 1225 (1957) ("[F]orcing the custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind. He might be compelled to convict himself out of his own mouth. That is contrary to the spirit and letter of the Fifth Amendment").

When an individual has established a right to invoke Fifth Amendment privilege, yet that individual is deemed to be a custodian of collective entity documents, courts must carefully toe this line between justifiably requiring the production of documents and impermissibly requiring the individual to "disclose the contents of his own mind." *Id.; see also United States v. Doe*, 465 U.S. 605, 613–14, 104 S.Ct. 1237, 1242–43, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 410–12, 96 S.Ct. 1569, 1580–82, 48 L.Ed.2d 39 (1976); *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.), *cert. dismissed, Bailey v. Butcher*, 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985).

Plaintiff–Trustee's document requests clearly cross this line. In Plaintiff–Trustee's combined Interrogatories, Document Requests, and Requests for Admission, Plaintiff–Trustee makes four independent requests for document production. Each one of these requests clearly requires the responding party to weigh certain considerations and produce only those documents that satisfy the conclusions reached by the responding party. This clearly exceeds the minimal exception contemplated above. For example, Plaintiff–Trustee's document request number 43 states:

> Produce copies of all documents referred to or from which information is obtained in response to the foregoing Interrogatories, including, without limitation, *all* documents identified in your response to Question 21 above.

Clearly there is no way for the document custodian to comply with such a request without first complying with the more invasive questioning in the Interrogatories. This is not the kind of document production contemplated in *Braswell* and *Morganstern*.

The Fisher Court attempted to clarify where this line should be drawn by stating that where the document's existence and location is a "foregone conclusion," the act of production would be considered minimally testimonial and thus unprotected. *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. The Sixth Circuit further clarified this issue by stating that "[p]roduction of documents may be testimonial in any of three ways: by acknowledging that the documents exist; by acknowledging that they are in the control of the person producing them; or by acknowledging that the person producing them believes they are the documents requested and thereby authenticating them for purposes of Fed.R.Evid. 901." *Butcher*, 753 F.2d at 469.

In accordance with the above, it is clear all of the Plaintiff–Trustee's document requests are testimonial in that they require the agent to acknowledge that the agent "believes they are the documents requested." *Id.; see also Curcio*, 354 U.S. at 125, 77 S.Ct. at 1150 ("Answers to such questions are more than 'auxiliary to the production' of unprivileged corporate or association records"). In order for Plaintiff–Trustee to avoid requiring the agent to commit an overly testimonial act in producing requested documents, it is therefore necessary for Plaintiff–Trustee to more

narrowly define what documents she seeks. Unless and until Plaintiff–Trustee can narrow her requests in accordance with *Fisher* and *Butcher,* Defendants Leslie and Sharon Broock may rightfully invoke their Fifth Amendment privilege in reply to the document requests currently before the court.

In the alternative, as this court's previous order made clear, Plaintiff–Trustee may either pursue already identified BMS and/or Springmore agents who are individually unentitled to invoke the Fifth Amendment, or require BMS and/or Springmore to appoint such an agent. When such an agent is appointed or otherwise identified, Plaintiff–Trustee may safely exceed the limits of *Fisher* and *Butcher* without risking the invocation of the Fifth Amendment privilege.

### THE ISSUE OF FEES

In this court's Order, dated May 23, 1996, the court set a hearing on the issue of attorneys' fees. Defendants contend that such a consideration is improper, taken in the light of this court's April 11, 1996 Order. The April 11 Order stated that "[t]he Court finds that the circumstances make an award of expenses, including attorneys' fees unjust, [and] each party will bear their own expenses, including attorneys' fees." Defendants allege that this precludes the court from reconsidering the issue of attorneys' fees. The court does not agree.

This language, when adopted by the court, reflected the state of litigation at that point in time only. The court was at the time of the May 23, 1996 Order, and is still today, concerned with the extremely slow pace of discovery in this proceeding. Although the court is mindful of the legitimate issues of Fifth Amendment privilege raised by the Defendants, the court is equally satisfied that as of this Order today, the court has made it very clear what is expected of the parties. Should the parties fail to produce appropriate discovery measures from this point in time on, the court is not bound by the April 11 Order in considering attorneys' fees and other expenses as they relate to that inaction. In addition, as the court has set forth a clear set of expectations on behalf of both sets of parties to this proceeding, if the parties violate this court's order by further delaying appropriate discovery, the court will not limit itself to the issue of attorneys' fees and expenses, but will consider the issue of civil contempt under 11 U.S.C. § 105(a) (1994).

### CONCLUSION

Defendants' Motion to Reconsider is therefore GRANTED as it relates to Plaintiff–Trustee's current document requests. Plaintiff–Trustee is directed to narrow her requests in accordance with this court's opinion and the precedent in *Fisher* and *Butcher* noted above, or to pursue her discovery through other identified or requested agents. Until such an appropriate request is made, Defendants' Leslie and Sharon Broock are correct in their assertion of the Fifth Amendment privilege in this regard.

In all other matters, including but not limited to the issue of attorneys' fees, Defendants' Motion to Reconsider is DENIED.

It is so ordered.